THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DANIEL A. GUNSAULLUS, Defendant-Appellee.

Second District   No. 78-89

Opinion filed June 5, 1979.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Michael J. Lightfoot and John A. Wasilewski, Assistant State's Attorneys, of counsel), for the People.

Frank Wesolowski, Jr., Public Defender, of Wheaton, and Mary Robinson and Paul Glaser, both of State Appellate Defender's Office, of Elgin, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with possession of cannabis (more than 30 but less than 500 grams). The trial court granted the defendant's suppression motion and the State appeals.

The only witnesses at the suppression hearing were the defendant and the arresting officer. The defendant testified that at approximately 9:15 in the evening on May 10, 1977, he and three companions left the defendant's house, got into the defendant's car (a Dodge) and then drove out of an alley and onto the road. After traveling about two blocks the defendant was stopped by a Roselle Police Department squad car. The defendant exited from his car and walked back toward the squad car; the officer got out of his car, met the defendant between the two cars, pushed the defendant back to his car, made him put his hands on the car, and searched him. The officer did not merely pat the defendant down, according to the defendant's testimony, but went into the defendant's pockets with his hands. The defendant stated that he was wearing a nylon jacket which was unzipped so that the T-shirt and belt buckle area were visible to the officer. The officer found two bags of marijuana behind the defendant's belt buckle. The defendant described the marijuana as "soft."

The defendant testified, and it is not disputed, that he had recently transferred his license plates to the Dodge automobile; the registration card was introduced into evidence.

The arresting officer testified that he was on patrol alone when he observed four persons get into a vehicle and the vehicle pull out of an alley. The officer turned his squad car around and followed the vehicle, calling in a "registration check." The officer was informed that the license plates were registered for a 1974 Triumph, a different type of vehicle from the Dodge the plates were on. The officer notified "the base" that he was going to stop the vehicle. At the suppression hearing, the officer

stated that the radio operator then informed him that "a criminal history had been done and one of the Gunsaullus' was known to carry a gun * * *." After the officer pulled the defendant's car over, the defendant got out of his car, "turned his backside to the roadway and against the door, and then continued to turn, grasping the door in his left hand and closing it." The officer observed "what appeared to be a bulge" in the front of the defendant's waistline as the defendant walked toward him "a little faster than normal." The bulge was four inches high, three inches wide, and protruded 1½ to two inches from the defendant's body. The officer had once found a derringer in a suspect's pocket, with dimensions similar to the protrusion near the defendant's waistline, so the officer proceeded to pat the defendant down. The bulge at the defendant's waist was hard, so the officer removed the object which was causing the bulge, which proved to be two cylinder-like bags of cannabis.

Under cross-examination and questioning by the court, certain incongruities in the officer's testimony were developed. The officer acknowledged that although he testified on direct examination that he was told "one of the Gunsaullus' was known to carry a gun," he admitted that at the preliminary hearing he testified that the base informed him that "one of the subjects of that vehicle" was known to carry a firearm. He clarified these responses by stating that he was told that "the registered owner of the vehicle, which was a Gunsaullus was known to carry a firearm." Although the gist of these statements is perhaps the same, the defendant argues that they are an element of contradiction in the officer's testimony. A further incongruity was, in the defendant's view, presented by the officer's response to a question by the court, which indicated that the officer only traveled 300 feet before he received an answer to his call for a registration check. This testimony, which is consistent with the defendant's testimony that he was stopped after traveling only two blocks would indicate an extremely (and defendant asserts in his brief, improbably) rapid response to the officer's request.

The trial judge, unfortunately, made no findings of fact and the record is silent as to his reasons for granting the suppression motion. Of course, the order of the trial court is presumed to be correct, and this court may not substitute its judgment regarding the credibility of witnesses for that of the trial judge, who actually heard their testimony and observed their demeanor. See, e.g., *People v. Riggs* (1978), 62 Ill. App. 3d 338.

■■ However, trial court orders involving findings of fact are not insulated from appellate review merely because the trial court observed the demeanor of the witnesses. If a trial court abuses its discretion by entering orders which are against the manifest weight of the evidence, or disregards material and uncontradicted testimony of a credible witness

on a critical point, a court of review will not hesitate to reverse the trial court's order. A court of review will not presume that there were aspects of such a witness's testimony and demeanor not apparent from the cold type of the record which justified the trial court in entirely disregarding the testimony. It is thus the duty of this court to reverse a trial court's order granting a defendant's suppression motion where it appears from the record that the trial court's finding was manifestly erroneous and cannot be sustained on any grounds. See *People v. Rasmussen* (1978), 61 Ill. App. 3d 15.

■■ In this case, if the trial court could have justifiably chosen to disregard the arresting officer's testimony that he had been informed that the license plates on the defendant's Dodge were registered to a Triumph, then there would be no question but that the trial court acted correctly in granting the suppression motion. The problem is that there is nothing in the record which would justify such a conclusion. Although the officer's testimony would indicate an extremely rapid response to the officer's request for a registration check, this is hardly implausible in our age of computers and instant communications, and in any case, even highly credible witnesses are frequently mistaken regarding estimates of such matters as time and distance. Further, the officer's testimony that he was informed that the license plates were not registered to the defendant's Dodge is supported by the defendant's testimony that he had recently transferred the license plates to the Dodge. The officer's slightly different versions of the "criminal history" given to him regarding the owner of the vehicle the plates were registered to (apparently the Triumph) are reconcilable. There is, in short, nothing in the record which would warrant the trial judge in refusing to credit the officer's testimony.

Instead, the trial court was bound to find that the officer had been informed and reasonably believed that the license plates were not registered to the car he was following. This belief would, as defendant's counsel conceded during oral argument, justify the officer's action in stopping the defendant's car.

The question thus becomes one of whether the trial court could have held that although the investigatory stop of the defendant's vehicle was valid, the subsequent search of the defendant was not. It is well established that a police officer who has stopped a motor vehicle for a violation is authorized to conduct a search of the driver in order to insure his own safety and to prevent an escape if the circumstances reasonably indicate that the officer may be dealing with a criminal and not just an ordinary traffic offender. (See, *e.g., People v. Brown* (1967), 38 Ill. 2d 353; *People v. Blitz* (1977), 68 Ill. 2d 287.) The rule authorizing such searches is based upon painful realism; an officer's life may be at peril anytime that he stops a motorist and the potential danger is compounded when the

officer is alone (a fact which is well illustrated in *People v. Fletcher* (1978), 59 Ill. App. 3d 310, involving the tragic abduction and murder of Hillside Police Officer Anthony Raymond following a traffic stop). This rule has been incorporated into our Criminal Code which provides that "* * * [w]hen a peace officer has stopped a person for temporary questioning * * * and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." (Ill. Rev. Stat. 1977, ch. 38, par. 108—1.01.) Thus, if uncontroverted testimony of the arresting officer in this case demonstrated that the officer reasonably thought that he might be dealing with more than just a traffic violator, and that he was in danger, a trial court holding that a search was not justified would be manifestly erroneous.

■■ In passing upon the question of whether the circumstances warranted a search, courts should act with the hard reality behind the rule allowing such searches clearly in mind. The trial judge, sitting in the ordered security of his courtroom or chambers, should be guarded in substituting his judgment for that of the police officer, who may have been alone, at night, with little time to ponder the constitutional subtleties or legal nuances presented by a rapidly developing situation.

■■ In this case, the registration check raised the distinct possibility that the license plates on the defendant's car, or the car itself, had been stolen, suggesting a serious violation of the law. The stop occurred at night and the officer was alone, while defendant had three companions. The officer's testimony that the defendant exited his car in an unusual manner, turning with his back to the door, was uncontroverted, as was the officer's perception that the defendant then began walking toward him "a little faster than normal." When these facts are coupled with the officer's observation of a bulge at the defendant's waistline, of approximately the same dimensions as a derringer that the officer had once taken from a suspect, it becomes evidence that the officer could reasonably have believed that a "pat down" search of the defendant's person was necessary in order to assure the officer's safety, even if it is assumed that the officer's testimony about receiving a "criminal history" on the owner of the vehicle the plates were registered to (apparently the Triumph) would not have supported a search of the driver of the Dodge. See *People v. Lee* (1979), 69 Ill. App. 3d 756.

Although the trial judge could therefore not properly have found that a "pat down" search conducted by the arresting officer was unlawful, the suppression order would still be sustainable if the trial judge could have found that the search exceeded the permissible scope of such a search for weapons. (See *People v. McCarty* (1973), 11 Ill. App. 3d 421.) Although the defendant testified that the cannabis was "soft" and has argued that the officer could not have mistaken it for a weapon, the defendant also

testified that the cannabis was behind his front belt buckle, which would unquestionably have felt "hard" to the officer's touch. In fact, *any* object compressed behind a belt buckle would presumably have felt "hard" and the only way for the officer to ascertain whether the object was a weapon or not would have been for him to withdraw it from behind the belt buckle.

It is, therefore, our conclusion that the order of the trial court granting the defendant's motion is not sustainable on any grounds.

The order of the circuit court of Du Page County is reversed and the cause is remanded.

Reversed and remanded.

NASH and LINDBERG, JJ., concur.