THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
STEPHEN ROOS, Defendant-Appellee.

Fifth District   No. 5—87—0316

Opinion filed April 17, 1989.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Kathy J. Geer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Stephen Roos, was charged with driving under the influence of alcohol in violation of section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501). He filed a motion under section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—12) to quash his arrest and suppress evidence on the grounds that his arrest had been unlawful. Following a hearing in the circuit court of Jackson County, that motion was granted and the case was dismissed. The State now appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). We reverse and remand for further proceedings.

■ A circuit court's ruling on a motion to suppress should not be disturbed unless it is manifestly erroneous. (*People v. Beck* (1988), 167 Ill. App. 3d 412, 415, 521 N.E.2d 269, 272.) In view of the testimony presented at the suppression hearing here, however, we believe that manifest error was committed in this case. What took place at the suppression hearing has been set forth in an agreed statement of facts which the parties have prepared and submitted to us in lieu of a report of proceedings under authority of Supreme Court Rules 323(d) and 612(c) (107 Ill. 2d Rules 323(d), 612(c)).

The agreed statement of facts indicates that the only witness to testify at the suppression hearing was Steve Michaels, an officer with the Carbondale police department. According to the statement, Michaels told the court:

"[T]hat on January 18, 1987 at approximately 4:00 a.m. while on routine patrol, he observed an oncoming vehicle southbound on Oakland Street in Carbondale, Illinois, operating with high beam headlights. Officer Michaels flashed his lights at the vehicle, but the oncoming vehicle failed to dim its headlights. The vehicle turned west onto Walnut Street. Officer Michaels turned around on Oakland Street and pursued. At the intersection of Walnut and Poplar Streets, the officer observed the vehicle stop; the vehicle's brake lights were not functioning. Officer Michaels then initiated a traffic stop based solely on the headlight and brake light violations.

The officer approached the driver, identified in court as the defendant, Stephen Roos. Officer Michaels spoke with the defendant and observed a strong odor of alcoholic beverage about the defendant's person. The officer asked for identification and received a copy of an Illinois Official Sworn Report/ Notice of Statutory Suspension.

Officer Michaels, after observing the odor of alcohol on the defendant's person, asked the defendant to submit to a field sobriety test. The defendant consented. The officer requested the defendant to say the alphabet. The defendant submitted to that test and performed 'fine' according to the officer. Officer Michaels then demonstrated and explained the one-leg stand test to the defendant. The defendant submitted to that test. Officer Michaels observed the defendant put his foot down and sway, but testified that the defendant's performance was not unsatisfactory.

As the officer was about to discontinue the one-leg stand test and release the defendant without arrest, he looked closely at the Notice of Statutory Summary Suspension and observed that it had been issued by Southern Illinois University Police Department less than an hour earlier on the same morning. Officer Michaels further observed that the defendant's blood-alcohol content had been measured in connection with the prior arrest at .16. The officer then verified the arrest, blood alcohol reading, and suspension notice with the Southern Illinois University Police Department. Officer Michaels testified that he then arrested the defendant for driving under the influence of alcohol based on the strong odor of alcohol observed on the defendant's breath combined with the close proximity of the previous driving under the influence of alcohol arrest and blood-alcohol content of .16.''

If circumstances were as Officer Michaels related in his testimony, there can be no question that the arrest of defendant was valid. Officer Michaels' observation gave him probable cause to believe that two separate traffic violations were present in this case. The first is a violation of section 12—210(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 12—210(a)), which provides:

"Whenever the driver of any vehicle equipped with an electric driving head lamp or head lamps is within 500 feet of another vehicle approaching from the opposite direction, the driver shall dim or drop such head lamp or head lamps.''

The second is a violation of section 12—208(a) of the Illinois Vehicle

Code (Ill. Rev. Stat. 1985, ch. 95½, par. 12—208(a)), which states:

"Every vehicle other than an antique vehicle displaying an antique plate operated in this State shall be equipped with a stop lamp or lamps on the rear of the vehicle which shall display a red or amber light visible from a distance of not less than 500 feet to the rear in normal sunlight and which shall be actuated upon application of the service (foot) brake, and which may but need not be incorporated with other rear lamps."

Once defendant was arrested for these traffic violations, the strong odor of alcohol observed on his breath combined with the close proximity in time of his previous arrest for DUI and recent alcohol test reading of .16 gave Officer Michaels probable cause to arrest him for DUI on this occasion. See *People v. Wingren* (1988), 167 Ill. App. 3d 313, 320, 521 N.E.2d 130, 135.

■ ■ Given these circumstances, the only conceivable explanation for the circuit court's decision was that it simply did not believe Officer Michaels' testimony. We acknowledge that an order of the trial court is presumed to be correct and that this court may not substitute its own judgment regarding the credibility of witnesses for that of the trial judge, who actually heard their testimony and observed their demeanor. (*People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 442, 391 N.E.2d 142, 145.) In this case, however, Officer Michaels' testimony was consistent and uncontradicted. There is absolutely nothing to indicate that he might not have been telling the truth. Although the record contains no evidence that defendant was ever charged for the traffic violations which prompted his initial stop, this certainly does not mean that the stop was pretextual. A police officer may always warn of a traffic violation or reprimand a driver without citing him, and he is not required to charge a minor violation when, after a stop, he discovers a serious one. *People v. Patterson* (1980), 88 Ill. App. 3d 144, 146, 410 N.E.2d 223, 224.

■ The assessment of a witness' credibility is central to the factfinding process, and we do not mean to circumscribe the circuit court's fact-finding responsibility in any way. A circuit court's orders involving findings of fact are not, however, insulated from appellate review merely because the circuit court observed the demeanor of the witnesses. If the circuit court finds a witness to lack credibility, this must somehow be reflected in the record. "A court of review will not presume that there were aspects of such a witness's testimony and demeanor not apparent from the cold type of the record which justified the trial court in entirely disregarding the testimony." (*People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 443, 391 N.E.2d 142, 145; see

also *People v. Patterson* (1980), 88 Ill. App. 3d 144, 145, 410 N.E.2d 223, 224.) Here, there is absolutely no indication of any kind that the circuit court found any lack of credibility on the part of Officer Michaels. We must therefore conclude that its order granting defendant's motion to quash arrest and to suppress evidence is contrary to the manifest weight of the evidence. See *People v. Beck* (1988), 167 Ill. App. 3d 412, 417, 521 N.E.2d 267, 272.

■ Defendant attempts to resist this conclusion by arguing that the State should be precluded from challenging the circuit court's order because the record it presented on review is incomplete. This argument must also fail. Defendant correctly points out that "where a party desires to have a judgment reviewed it is incumbent upon him to present in the record the proceedings and judgment sufficient to show the errors complained of" (*People v. Davis* (1983), 117 Ill. App. 3d 98, 99-100, 452 N.E.2d 887, 888-89), but in this case that was done. It was done, as we have indicated, through an agreed statement of facts. Our review of that agreed statement of facts has shown that the circuit court committed manifest error. If defendant believed that the statement did not accurately reflect the facts material to this controversy, he should not have agreed to it.

For the foregoing reasons, the order of the circuit court of Jackson County granting defendant's motion to quash arrest and suppress evidence is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

WELCH, P.J., concurs.

JUSTICE HOWERTON, dissenting:
This decision holds that a factual basis justifying disbelief of a police officer must be given. This decision is wrong.

The majority finds that the circuit court did not believe the police officer, but reverses anyway, saying, "[i]f the circuit court finds a witness to lack credibility, this must somehow be reflected in the record." 181 Ill. App. 3d at 685.

Be forewarned, therefore, all you who suppressions give, you must state a factual basis justifying your disbelief of a police officer, or you shall be reversed!

Be forewarned, further, that saying, "I do not believe the police officer," is not enough to support a suppression order, for the majority has said, " '[a] court of review will not presume that there were

aspects of *** a witness's *** demeanor not apparent from *** the record which justified the trial court in *** disregarding the testimony.' " 181 Ill. App. 3d at 685, quoting *People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 443, 391 N.E.2d 142, 145.

Be forewarned! You must observe, articulate, and be justified!

It is wrong to require a court to give a factual basis justifying disbelief.

It is wrong because it requires too much.

It is wrong because we do not require the same of juries; yet, they also sit as triers of fact.

It is wrong, because it is inconsistent with reality.

People decide who to believe and who not to believe without giving a factual basis. We should require no more of judges, who, by the way, do not escape their humanity by donning a robe.

A factual basis for belief is rarely given, because it usually is impossible to give. It is rarely, if ever, said, "How do I believe thee? Let me count the ways. Thee did not sweat, nor tremble, nor did thy tongue stumble."

No.

Belief is a product of experience and intuition as well as observation, and the basis for intuition almost always refuses articulation.

Here is the folly of this decision.

Suppose the circuit judge had said, "I do not believe that the police officer's testimony is reasonable when he said 'the oncoming car did not dim his lights.' " Would that satisfy the majority? No. It would not, because no factual basis justifying disbelief is given. Suppose further, the judge attempted to justify disbelief by saying, "The police always say the oncoming car did not dim its lights." Would that satisfy the majority? No. It would not satisfy the majority, because the police officer's statement is uncontradicted and unimpeached, and the majority believes that they should not *presume* that " '[t]here were aspects of *** a witness's *** demeanor not apparent from the cold type of the record which justified the trial court in disregarding the *** testimony.' " (181 Ill. App. 3d at 685, quoting *Gunsallus*, 72 Ill. App. 3d at 443, 391 N.E.2d at 145.) That can only mean this case commands, "Give a factual basis."

Since the word *presume* is being thrown around, I think I will say that we ought to *presume* that circuit courts are faithful to their oath. I believe we should presume that they are in good faith when they do not believe a witness.

Our whole judicial system rests on faith and belief in judges, and on acquiescence in their orders. We command no troops. We bear no

arms. We command by our integrity and the force of our ideas.

We have announced our disbelief in the faithfulness of our circuit courts by presuming that the circuit court was wrong in disregarding a police officer's testimony. How then will we preach belief, preach trust, preach faith, preach acquiescence to the public, when we ourselves act in contradiction to our message? We will not, at least successfully, and especially we will not when it is apparent that the real basis of the decision is a notion that a police office's testimony is somehow different.

The majority says that police officers must be believed, unless there are observations about the witness' demeanor which are articulated, justifying disbelief. Would such a rule be fashioned for firemen? For teachers? For mechanics? For used care salesmen, or television preachers? I think not.

Listen! Just as I do not believe judges are unfaithful, likewise, I do not believe police officers lie. But my task here is not to choose between one being faithful on the one hand, and the other not telling the truth on the other. Ironically, both might be faithful, truthful. But, my task is not to resolve that conflict. My task is to uphold the framework of the house of justice as best I can. In doing my duty, I place no wager on either of them. Instead, I place my trust in the system of justice that has kept my Fathers, me, and, I hope, my posterity free.

That trust calls us to affirm. Failing that, it calls me to dissent.

I may be long-winded, but I hope I am not deluded about the influence of this decision.

This decision will not cause the collapse of American jurisprudence. It will not strike a deathblow to our constitution. It will not topple the free world. In fact, I hope it hides its face, turns away from the mainstream of the law and is never heard of again. And, it most likely will.

I am personally glad we have little influence outside our district: A lot of influence truly would be frightening when decisions like this one are plunged into an unsuspecting world, for in a grave sense, this decision, in a hidden, yet corrosive way, like a termite, nibbles at the foundation of some basic American values.

In this grave sense, this decision has the effect of commanding courts to believe police officers.

In America, courts are not commanded to believe anyone, not even the police.