(No. 76722.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CURTIS MITCHELL, Appellant.

*Opinion filed April 20, 1995.*

212

HEIPLE, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Theodore Fotios Burtzos, Susan R. Schierl and Laura A. Bertucci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal lies to this court on a certificate of importance from the appellate court (Ill. Const. 1970, art. VI, § 4(c); 134 Ill. 2d R. 316). The issue, as framed by the appellate court, is whether the "plain touch" doctrine recognized by the United States Supreme Court in *Minnesota v. Dickerson* (1993), 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130, violates article I, section 6, of the Illinois Constitution.

FACTUAL AND PROCEDURAL BACKGROUND

In July 1992, Officer Edward King observed defendant, Curtis Mitchell, driving a 15-year-old Oldsmobile southbound in the alley of Orleans Street in Chicago. The car's lights were not on, and King could not see any license plates. Because that area of the city had a high incidence of auto theft, King kept the Oldsmobile under surveillance.

After being followed for a few blocks, defendant pulled over and parked the car. Defendant exited the vehicle as King approached. King identified himself to defendant and began questioning him concerning ownership of the car and his reason for driving without lights.

As King stood next to the vehicle, he was able to observe that the steering column on the car had been "peeled." He also saw "crack pipes" and small pieces of copper scouring pads on the front seat of the car. In King's experience as a police officer, he had seen pipes used to smoke cocaine and scouring pads used as filters inside those pipes.

King conducted a patdown search of defendant "primarily" for weapons. During the patdown, he felt a foreign object inside defendant's shirt pocket. King did not believe that what he felt was a weapon; it felt, instead, like a piece of rock inside a small baggie.

King reached inside defendant's pocket and pulled

out the object. He observed it to be what he believed was rock cocaine. King then placed defendant under arrest for possession of narcotics.

Prior to trial, defendant filed a motion to quash the arrest and to suppress the evidence. In his motion, defendant maintained that the officer's seizure of the cocaine went beyond the scope of a *Terry* patdown. See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

The trial court found the *Terry* stop and patdown to have been proper. However, the court held that seizure of the drugs exceeded the scope of *Terry*. The court, therefore, granted defendant's motion and entered an order to quash the arrest and suppress the evidence.

The State filed a motion for reconsideration. In its motion, the State argued that the search and seizure could be upheld either as incident to an arrest or under the "plain touch" doctrine. The State's motion was denied.

The State appealed the trial court's order. During the pendency of the appeal, the United States Supreme Court decided *Minnesota v. Dickerson* (1993), 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130, in which the Court held that the "plain touch" doctrine did not violate the fourth amendment proscription against unreasonable searches and seizures. Noting this court's predisposition to interpret section 6 of the Illinois Bill of Rights consistently with the Supreme Court's interpretation of the fourth amendment, the appellate court adopted *Dickerson*'s "plain touch" doctrine. The court, finding the seizure proper under the doctrine, reversed the circuit court.

The appellate court subsequently granted defendant's motion to issue a certificate of importance to this court. Ill. Const. 1970, art. VI, § 4(c); 134 Ill. 2d R. 316.

## *MINNESOTA v. DICKERSON*

In *Dickerson*, the Supreme Court granted *certiorari*

to resolve a conflict among the State and Federal courts over whether contraband detected through the sense of touch during a patdown search is proper and admissible evidence. The Court noted that under certain circumstances, police officers may seize contraband detected during the lawful execution of a *Terry* search. In its analysis, the Court placed particular reliance on its decision in *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, which sanctioned "plain view" seizures of items other than weapons in the context of a *Terry* search of automobiles.

Specifically, the Court stated, " 'If while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.' " *Dickerson*, 508 U.S. at 374, 124 L. Ed. 2d at 345, 113 S. Ct. at 2136, quoting *Long*, 463 U.S. at 1050, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481.

Expounding on the "plain view" doctrine, the Court stated that, if police officers are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if " 'its incriminating character [is not] "immediately apparent" ' [citation]—the plain-view doctrine cannot justify its seizure." *Dickerson*, 508 U.S. at 375, 124 L. Ed. 2d at 345, 113 S. Ct. at 2137.

The Court noted that the "plain view" doctrine has obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. "If a police officer lawfully pats down a suspect's outer clothing and feels

an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Dickerson*, 508 U.S. at 375-76, 124 L. Ed. 2d at 345-46, 113 S. Ct. at 2137.

Applying these principles to the facts before it, the Court held that the officer's seizure of the crack cocaine exceeded the bounds of *Terry*. The Court held that although the officer was lawfully in a position to feel the lump in the defendant's pocket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search—squeezing, sliding and otherwise manipulating the contents of the defendant's pocket. Because the further search of the defendant's pocket was constitutionally invalid, the seizure of the cocaine that followed was unconstitutional. *Dickerson*, 508 U.S. at 377, 124 L. Ed. 2d at 347-48, 113 S. Ct. at 2138-39.

## DISCUSSION

The Supreme Court's decision in *Dickerson* resolves any conflict concerning whether the "plain feel" doctrine offends fourth amendment guarantees. The question presented for our resolution is whether the doctrine comports with Illinois' article I, section 6, protections. The appellate court, although presented with an alternative basis upon which to uphold the validity of the seizure, rested its decision on the "plain touch" doctrine. Although we need not do so (see *Nowicki v. Union Starch & Refining Co.* (1973), 54 Ill. 2d 93, 100 (Goldenhersh, J., dissenting) (certification does not require that we find the question certified to be the

controlling issue in the case)), we confine our analysis to the consideration and application of the doctrine.

At the outset, however, we must address defendant's assertion that we are not required to follow the Supreme Court's interpretation of Federal protections in "lock-step." We acknowledge that we are not bound to follow the Supreme Court's interpretation of Federal constitutional law. Indeed, this court has often stated that we may construe provisions of our State constitution to provide more expansive protections than the comparable Federal constitutional provisions. (See *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 390; *People v. Perry* (1992), 147 Ill. 2d 430, 436; *People v. Tisler* (1984), 103 Ill. 2d 226, 243.) Certain judicially crafted limitations, however, define the exercise of that right.

In *Tisler*, 103 Ill. 2d at 245, in response to the defendant's entreaty for a broader construction of our search and seizure provision, this court stated that "[w]e must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal constitution." See, *e.g., People v. Fitzpatrick* (1994), 158 Ill. 2d 360; *People v. McCauley* (1994), 163 Ill. 2d 414.

Prior to 1970, section 6 of our Bill of Rights mirrored the language of the fourth amendment. As it currently reads, section 6 provides: "The people shall have the right to be secure in their persons, houses, papers, and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." (Ill. Const. 1970, art. I, § 6.) The addition of express provisions for invasions of privacy and interceptions of communication is a product of the 1970 Constitutional

Convention. No similar provisions are expressed in the Federal fourth amendment. In all other respects, however, the language of section 6 continues, nearly, to parallel that of the Federal fourth amendment. *Cf.* U.S. Const., amend. IV; see *Tisler*, 103 Ill. 2d at 235-36.

Defendant views the additional language in section 6 as evidencing the drafters' intent that Illinois' search and seizure clause provide more expansive protections than its Federal counterpart. Then, as a further attempt at satisfying the requirements announced in *Tisler*, he offers the verbatim transcript of the convention debates on section 6.

This issue of the expansiveness of section 6 was considered and correctly decided in *Tisler* and no purpose is served by our reconsideration. We would simply add that the comments of committeeman Dvorak, in his address to the convention on the proposed changes to section 6, are particularly pertinent on this point. Dvorak stated:

"There is nothing new or no new concepts that the Bill of Rights Committee intended to provide insofar only as the search and seizure section—or the search and seizure concept—is concerned if, in fact, we break [section 6] down in three concepts—as I originally stated." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1523-24.

Given the express intent of the drafters to leave unaltered the search and seizure clause of section 6, the additional language in our section 6 provides no basis for an interpretation different from the Federal search and seizure clause.

In the face of Dvorak's clear statement of the drafters' intent, defendant, nonetheless, seeks support for his argument by focusing on other of Dvorak's comments. Specifically, defendant cites to Dvorak's statement that the committee "did not intend in any way to legalize or deal with or make legally constitutional—or constitu-

tionally—a constitutional question, the 'stop and frisk' concept, for instance." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1524.

The import of this statement is not entirely clear. Nevertheless, we do not understand it to negate Dvorak's prior statement of the drafters' intent concerning the search and seizure clause.

Consistent with *Tisler*, we find nothing, either in the language of the provision or in the debates, to support a divergence in interpretation of our section 6 search and seizure clause from the Federal fourth amendment interpretation. Indeed, the court in *Tisler* stated that after having accepted the pronouncements of the Supreme Court in deciding fourth amendment cases as the appropriate construction of the search and seizure provisions of the Illinois constitution for so many years, absent some *substantial grounds*, we should not suddenly change course. *Tisler*, 103 Ill. 2d at 245.

Defendant next asserts that the concept of search and seizure incorporates the right to privacy. Proceeding from that premise, he argues that the police conduct involved in this case, that is, the touching of his body, falls within the personal privacy clause of section 6 as opposed to the search and seizure clause. Defendant then notes that our constitution, unlike the fourth amendment, makes an express provision for the right to privacy. Relying on *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, he asserts that section 6 goes beyond Federal constitutional guarantees with respect to that right. It is his contention that he is entitled to the greater protections afforded under our right-to-privacy clause.

The State initially responds that the right-to-privacy clause of section 6 does not provide greater protections than does the fourth amendment. Consistent with that position, the State urges our reevaluation of language in

*Will County Grand Jury* to that effect. Alternatively, the State argues that the section 6 personal privacy right is confined to invasions into highly personal matters and does not apply to the conduct at issue here.

We first consider under which clause of section 6 the conduct involved here falls. We do not disagree with defendant's basic premise concerning the relationship of search and seizure and the right to privacy. Clearly, not just search and seizure, but each of the three clauses included in section 6 shares a commonality of purpose—the protection of an individual's privacy interests. Notwithstanding that commonality, each clause differs with respect to the conduct it was designed to prohibit. The scope of *Terry*, as well as the "plain view" doctrine, out of which "plain touch" was born, has traditionally been tested against the bounds of the search and seizure clause of section 6. We do not perceive that the recent addition of a right-to-privacy clause effected any change in that regard. Thus, even though the conduct here triggers right-to-privacy concerns generally, such conduct is more particularly a search and seizure issue.

Dvorak's comments concerning the privacy clause provide insight into the drafters' perceptions of the nature of the conduct covered by that clause. He commented:

> "We have now the concept of a general information bank whereby the state government or the federal government can take certain pertinent information about each and every one of us based on, for instance, our social security number—know our weight, height, family ages, various things about us—and this is not acceptable to—was not acceptable—or the theory or the thought of such a thing—was not acceptable to the majority of our committee in approving section 6."

Later, when asked specifically what is meant by invasions of privacy, Dvorak added that peeping into the women's washroom through a peephole could be considered an invasion of one's privacy. (3 Record of

Proceedings, Sixth Illinois Constitutional Convention 1530.) The clause has subsequently been interpreted to cover the seizure of pubic or head hair and physical evidence of a noninvasive nature, such as an in-person appearance in a lineup, fingerprints or palmprints (see *Will County Grand Jury*, 152 Ill. 2d 381), as well as chemical tests of breath, blood and urine (see *King v. Ryan* (1992), 153 Ill. 2d 449). See also *People v. Lurie* (1968), 39 Ill. 2d 331 (right extended to cover an individual's privacy in books and records).

The Bill of Rights Committee merely "felt that [it] would be very progressive and very thorough and very proper [to] include all three theories into section 6 of [the] bill of rights." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1525 (comments of committeeman Dvorak); see also Con Con, Issues for the Illinois Constitutional Convention 46 (V. Ranney ed. 1970).

Apparent from the convention debates is that the drafters intended no change in the categorization of conduct traditionally covered by the search and seizure clause. By adding the right-to-privacy clause, the drafters merely intended to make our constitution a more progressive and contemporary document. We note additionally that it is not generally held that privacy clauses are an additional source of protection in the criminal context beyond those rights already afforded by more specific clauses governing search and seizure. J. Friesen, State Constitutional Law 2—4 n.4 (1994).

We conclude that the section 6 right-to-privacy clause does not cover the conduct at issue here. Rather, the conduct, as always, continues to fall within the bounds of the search and seizure clause. Having so concluded, we decline the State's invitation to reconsider the language in *Will County Grand Jury* concerning the breadth of our right-to-privacy clause. We now return to the question presented to us by the appellate court.

In light of this court's stated election to construe our section 6 guarantees consistently with the Supreme Court's interpretation of the fourth amendment, the answer to the question certified to us seems clear. The "plain touch" doctrine does not violate our section 6 guarantees.

In so concluding, we are mindful that, in interpreting the warrant requirement of our State constitution, we are charged with the duty to "carefully balance the legitimate aims of law enforcement against the interest of all our citizens in preventing unreasonable intrusions on their privacy." (*People v. Smith* (1983), 95 Ill. 2d 412, 422.) Significantly, the Supreme Court is charged with a comparable mandate with respect to its interpretation of fourth amendment guarantees. (See *United States v. Place* (1983), 462 U.S. 696, 703, 77 L. Ed. 2d 110, 118, 103 S. Ct. 2637, 2642.) We accept that the Court's adoption of the "plain touch" doctrine strikes the proper balance between the relevant competing interests. Also, and significant to our acceptance, is that "plain touch" is not a newly created exception to the warrant requirement. The doctrine merely flows out of the existing "plain view" doctrine which has been, in some form, operational in this State since this court's decision in *People v. Exum* (1943), 382 Ill. 204.

Heretofore, when confronted with a question concerning search and seizure guarantees on which the Supreme Court has spoken, we have not done substantially more than reiterate our election to follow the Court's interpretation. (See, *e.g.,* *Tisler*, 103 Ill. 2d at 245; *Smith*, 95 Ill. 2d at 422; *People v. Jackson* (1961), 22 Ill. 2d 382, 387.) In light of the Court's comparable mandate to balance the competing interests (see *Place*, 462 U.S. at 703, 77 L. Ed. 2d at 118, 103 S. Ct. at 2642), such approach has been both expedient and appropriate. We are not, however, precluded from engaging in

our own independent analysis, particularly when confronted, as we are here, with issues not addressed in the Court's *Dickerson* opinion. Thus, having concluded concerning the constitutionality of the doctrine, we nevertheless consider the nature of the doctrine and defendant's several challenges to its propriety.

### The "Plain Touch" Doctrine

Generally, courts which have upheld seizures under the "plain touch" exception have done so by analogy, merely substituting the officer's sense of touch for the officer's sense of sight. Those courts which have rejected the doctrine, however, view it as an improper expansion of *Terry* and its supporting rationale. (See Note, *The "Plain Feel" Exception—A Fourth Amendment Rendition of the Princess and the Pea: State v. Dickerson*, 62 U. Cinn. L. Rev. 321, 331-34 (and cases cited therein).) Given the Court's holding in *Long*, however, rejection of the doctrine on that basis is insupportable.

As stated earlier in this opinion, *Long* extended the scope of *Terry* to permit the seizure of items other than weapons in the context of automobile searches. (See 3 W. LaFave, Search & Seizure § 9.4(f) (2d ed. 1987).) Notably, even prior to *Long*, this court read *Terry* and Illinois' codification of its holding to permit such seizures. See *People v. Lee* (1971), 48 Ill. 2d 272; see also Ill. Rev. Stat. 1971, ch. 38, pars. 107—14, 108—1.01.

The notion of "plain touch" is not foreign to Illinois. In *People v. Wright* (1968), 41 Ill. 2d 170, 174, the court was confronted with the propriety of admitting evidence discovered through an officer's use of vision and hearing. In its discussion, the court noted that the "plain view doctrine has been applied to anything which an officer becomes aware of by use of his *five senses* while in a lawful position." (Emphasis added.) See also *People v. Eichelberger* (1982), 91 Ill. 2d 359 (holding that an offense is committed in an officer's presence when knowl-

edge of the commission of an offense is acquired through *any* of his senses).

Subsequent to *Wright*, this court decided *Lee*, 48 Ill. 2d 272. The parties have not cited *Lee*. Yet, *Lee* is, in effect, an early application of what has now come to be characterized as the "plain touch" doctrine. In *Lee*, the court upheld the police officers' tactile identification and seizure of shotgun shells and a gun shoulder holster as properly within the bounds of *Terry*.

Specifically, in *Lee*, the defendants were subjected to a "pat search." The search revealed that one defendant was wearing an empty shoulder holster beneath his outer coat and carrying a shotgun shell in his coat pocket. The other defendants were then searched for the purpose of locating the gun which the officers believed was in the possession of one of them. No gun was found, but gun shells were discovered in the possession of some of the defendants. The defendants were subsequently convicted of unlawful possession of firearms ammunition.

As if presaged, the analysis now articulated by the Court in *Dickerson* for "plain touch" purposes parallels the *Lee* court's analysis in upholding the seizure. Specifically, in *Lee*, as required in *Dickerson*, the court first determined the propriety of the stop and pat search under *Terry*. Next, as is also required by *Dickerson*, the court in *Lee* considered whether the search exceeded the scope of *Terry*. In so doing, the court determined that, after detecting the holster and shell from the pat search, the officer had reached inside the defendant's outer coat and seized the items. Significantly, the court stated, "[t]he objects were hard and of appreciable size and their presence apparent from touching the outer clothing. The shell could be reasonably identified by the officer in his pat search as some object capable of being used as a weapon. The shape of the holster and the loca-

tion permitted its ready identification." *Lee*, 48 Ill. 2d at 278.

*Lee* fits neatly within that category of cases that have adopted "plain touch" by analogy to "plain view." However, the court in *Lee* simply accepted, without resort to supporting rationale, that the officers' tactile perceptions were both reliable and proper. Because we agree with the rationale in *Dickerson*, we now adopt its reasoning to reaffirm the holding in *Lee*.

## Defendant's Challenges to the Doctrine

Defendant's challenges to the "plain touch" doctrine afford us the opportunity to further set out the supporting rationale for the doctrine and, to the extent necessary, clarify its operation in Illinois.

Defendant first argues that the Court, in adopting the "plain feel" doctrine, failed to consider the individual's reasonable expectation of privacy in those items which he seeks to keep private.

Defendant has apparently overlooked that portion of the *Dickerson* opinion which addressed this issue. In *Dickerson*, the Court reasoned that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. See *Dickerson*, 508 U.S. at 376, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.

Defendant next argues that the doctrine conflicts with the inadvertency requirement of the "plain view" doctrine. He asserts that under the "plain view" doctrine, only items which are inadvertently discovered during an otherwise lawful search may be seized. (See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) He maintains that the inadvertency requirement is not met when the police know in advance the location of the evidence and thus intend to seize it.

Any inadvertency requirement for "plain view" purposes was rejected in *Horton v. California* (1990), 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301. In *Horton*, the Court noted that an inadvertency requirement had been earlier offered as necessary to avoid a violation of the constitutional requirement that a valid warrant particularly describe the things to be seized. In now rejecting the requirement, the Court noted that if an officer expects to find an item in the course of a search, his expectation should not serve to invalidate a subsequent seizure of that item. The relevant consideration is whether the search had gone beyond the area and duration defined by the terms of the warrant or a valid exception to the warrant requirement.

Additionally, the Court in *Horton* noted that the inadvertency requirement is not necessary to prevent police from conducting general searches. This is so, the Court held, because those concerns are already addressed by requiring that no warrant issue unless it particularly describes the place to be searched and persons to be seized. In the case of a warrantless search, the extent of the search is circumscribed by the exigencies which justify its initiation. If the scope of the search exceeds that permitted by the terms of the warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.

Consistent with *Horton* and the "plain view" doctrine, no inadvertency requirement is articulated in *Dickerson* for "plain touch" purposes.

Defendant raises additional questions concerning the reliability of tactile perceptions. He urges that the sense of touch is inherently less reliable and, further, that it is more intrusive than sight.

This issue was also addressed by the Court in *Dickerson*. Incidentally, we note that of all of the challenges

asserted in opposition to the "plain touch" doctrine, this one is most frequently asserted. As the Court in *Dickerson* pointed out, however, *Terry* itself was based upon the supposition that the sense of touch is capable of revealing the identity of an object with enough reliability to justify a weapon's seizure. See *Dickerson*, 508 U.S. at 376, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.

We note also that not even all weapons are of easily discernable shape, particularly when covered by a layer of heavy clothing. However, in the context of a *Terry* stop and frisk, where an officer's training and experience have led him reasonably to conclude that a perceived object is a weapon, seizure of that object has been upheld as valid. (See, *e.g., People v. Gunsaullus* (1979), 72 Ill. App. 3d 440; see also 5 L. Pieczynski, Illinois Practice § 13.1 *et seq.* (1989).) It is the officer's "plain touch" of the object which elevates his reasonable suspicion that the suspect might be armed to the necessary probable cause to believe that the suspect is concealing a weapon. See Holtz, *The "Plain Touch" Corollary: A Natural and Foreseeable Consequence of the Plain View Doctrine*, 95 Dick. L. Rev. 521 (1991).

The same may be said of the officer's tactile perception of contraband. When objects have a distinctive and consistent shape that an officer has been trained to detect and that officer has had previous experience in detecting such objects, his tactile perceptions can provide him with the same recognition that his sight would have provided. (See *United States v. Pace* (C.D. Cal. 1989), 709 F. Supp. 948; see also *United States v. Williams* (D.C. Cir. 1987), 822 F.2d 1174.) We caution that the officer's belief must be objectively reasonable, in light of his past experience and training, and capable of verification. (See *Pace*, 709 F. Supp. 948.) However, probable cause is probable cause, regardless of whether it develops from sight or touch.

Further, as the *Dickerson* Court reasoned, if in fact touch is less reliable than sight, that only means that fewer seizures will be justified by "plain touch." Because the fourth amendment requires that officers have probable cause to believe that an object is contraband before seizing it, excessively speculative seizures will be prevented. (See *Dickerson*, 508 U.S. at 377, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.) Where an object is not readily identifiable, probable cause is absent, and "plain touch" provides no support for its seizure.

Finally, we note that tactile evidence can be preserved for trial to assure courts of an opportunity to evaluate the object the officer claims justified the seizure. See, *e.g., Commonwealth v. Marconi* (1991), 408 Pa. Super. 601, 597 A.2d 616 (in rejecting "plain touch" as basis for seizure of drugs, court held that minute amount of drugs found could not have been identified through sense of touch; object was as consistent in feeling with a button or an aspirin as it was with methamphetamine).

Regarding the greater intrusiveness of "plain touch," *Dickerson* noted that the concern was inappropriate because the feared intrusion would already be authorized by *Terry.* "The seizure of an item whose identity is already known occasions no further invasion of privacy," and the suspect's privacy interests are not enhanced by a rule banning the seizure of contraband "plainly detected through the sense of touch." *Dickerson*, 508 U.S. at 376, 124 L. Ed. 2d at 346-47, 113 S. Ct. at 2137-38.

The doctrine does not permit the search to exceed the initial intrusion. As soon as the officer is satisfied that an object is not a weapon, a further search to determine the nature or identity of that object is impermissible. See *Dickerson*, 508 U.S. at 378, 124 L. Ed. 2d at 347-48, 113 S. Ct. at 2138-39 (where officer

manipulated object to determine its identity, such conduct constituted a further search not permissible under *Terry*).

Defendant next argues that "plain touch" impermissibly expands the scope of *Terry* to permit the search for evidence and blurs its clear limits.

Defendant misperceives the operation of the doctrine. As we have already stated, the scope of the search is defined by *Terry*. Once the officer determines that the object felt is not a weapon, he is not authorized to proceed with a further search. The doctrine neither countenances nor promotes unfettered searches of the suspect's person beyond that which is permissible in the search for weapons.

In a related argument, defendant contends that "plain touch" constitutes an unwarranted extension of *Terry* because the underlying State interest which the doctrine promotes is the search for and preservation of evidence. Such justification, he also argues, is not outweighed by an individual's privacy interests.

When "plain touch" operates in the context of a *Terry* stop and frisk, the interest or justification for the intrusion is, nonetheless, the protection of the investigating officer. True, preservation of evidence may, in fact, result from an application of "plain touch." However, the State's interest is to be found in the prior legal justification supporting the intrusion. It is simply that, under the "plain touch" doctrine, where in the conduct of that *Terry* stop and frisk, the officer discovers contraband, he is not required to avert his attention from such evidence. The same practical considerations that justify the "plain view" doctrine also justify "plain touch." (See *Coolidge,* 403 U.S. at 467-68, 29 L. Ed. 2d at 583-84, 91 S. Ct. at 2038-39; see also MacIntosh, *Fourth Amendment—The Plain Touch Exception to the Warrant Requirement,* 84 J. Crim. L. & Criminology 743, 755

(1994).) "Plain touch" merely operates to supplement the prior legal justification. *Cf. Coolidge*, 403 U.S. at 466, 29 L. Ed. 2d at 583, 91 S. Ct. at 2038.

Defendant's final challenge to the doctrine is that it improperly allows the fruit of the search to serve as the justification for the seizure of the contraband. In support, he notes the appellate court's reasoning that when the officer felt the plastic baggie he had probable cause to believe that the object he felt was contraband and, therefore, the seizure was proper. Defendant maintains that such reasoning is faulty and conflicts with decisions defining the scope of search incident to arrest.

We do not here consider whether this seizure may be justified as resulting from a search incident to a valid arrest. We, therefore, decline consideration of this issue.

### Application of the "Plain Touch" Doctrine

The only matter remaining for our consideration is application of the doctrine to the particular facts of this case. Before proceeding, we note that a trial court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. *De novo* review by this court is appropriate, however, when, as here, neither the facts nor the credibility of witnesses is questioned. *People v. Foskey* (1990), 136 Ill. 2d 66, 76.

We reiterate those facts necessary to our analysis and application of the doctrine. Initially, we note that there is no contention that either the stop or the frisk of this defendant was improper under *Terry*. Thus, as required for "plain touch" purposes, there was a prior legal justification for the intrusion.

Proceeding, then, from the time of the *Terry* stop, the record reveals that King observed crack pipes and scouring pads on the front seat of the automobile. He described the patdown as starting with the defendant's wrists and making his way up defendant's upper body, "just feeling." When he felt defendant's chest, by his

pockets, he felt a foreign object inside his shirt pocket. The object felt to King like a piece of rock inside a small baggie. Prior to seizing the object, King believed it was a controlled substance, "more specifically [he] felt that it was probably rock cocaine." There is nothing in the record to suggest that King manipulated the object in order to determine its identity.

King has been a Chicago police officer for about 17 years. In his experience as a police officer he has seen pipes used to smoke crack cocaine over one hundred times and has also recovered narcotics.

Based upon these facts, we find that the requirements for seizure under the "plain touch" doctrine have been met and seizure of the illegal contraband was, therefore, proper. Defendant argues, however, that given the size of the substance recovered from his person, it was not possible that King could have immediately identified the object as a narcotic. He relies on *Commonwealth v. Marconi* (1991), 408 Pa. Super. 601, 597 A.2d 616, as support for the proposition that given the size of the object, any claimed identification of the object could not be certain.

We disagree with defendant's impossibility argument. Given that King observed the drug paraphernalia on the seat of the car, he likely suspected that drugs were present, either on defendant's person or in the vehicle. Thus, it is conceivable that King's prior police experience with drugs, coupled with his observation of drug paraphernalia on the seat and his tactile perceptions of the object in defendant's pocket, enabled his ready tactile identification of the object.

Further, we note that although the court in *Marconi* rejected "plain touch" on the particular set of facts before it, the court announced no wholesale rejection of the doctrine. In a footnote to the opinion, the court stated that it was not holding that under certain cir-

cumstances the sense of touch could not be used as an accurate technique of identity. The court acknowledged that "[a]t times, perception through touch is a tool as definitive as perception through the other senses." See *Marconi*, 408 Pa. Super. at 615 n.17, 597 A.2d at 623 n.17.

Defendant additionally argues that the appellate court erroneously assumed that King was readily able to discern the presence of narcotics from his "search" of defendant's pocket. He maintains the record does not clearly show that when King felt the object, it was immediately apparent to him that the object was contraband. Thus, King did not have probable cause to seize the item.

The Court in *Dickerson* appears to use the phrases "immediately apparent" and "probable cause" interchangeably. That notwithstanding, we notice that in fashioning the requirements for "plain touch," the Court adopted the requirements of the "plain view" doctrine. "Plain view" requires probable cause to permit a seizure. (See *Arizona v. Hicks* (1987), 480 U.S. 321, 326, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153; see also *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (acknowledging that the phrase "immediately apparent" for "plain view" purposes was a poor choice of words).) Thus, it is reasonable and consistent to conclude that probable cause is sufficient to justify seizure in the "plain touch" context. (See MacIntosh, *Fourth Amendment—The Plain Touch Exception to the Warrant Requirement*, 84 J. Crim. L. & Criminology 743, 760-63 (1994).) Regardless of whether the officer detects the contraband by sight or by touch, he must have probable cause to believe that the item is contraband before seizing it. See *Dickerson*, 508 U.S. at 377, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.

Probable cause exists when police " 'have knowledge

of facts which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant.' " (*People v. Wright* (1985), 111 Ill. 2d 128, 145, quoting *People v. Eddmonds* (1984), 101 Ill. 2d 44, 60.) Relevant to this determination is the officer's factual knowledge, based on his prior law enforcement experience. *People v. Smith* (1983), 95 Ill. 2d 412, 419-20.

Those facts, as we have recited them above, would lead a reasonable person to believe that drugs were present either in the vehicle or on the person of the defendant. Further, it was King's testimony that when he felt the object he believed it to be crack cocaine. King's visual observation, along with his touch of the rocky substance, properly support a conclusion that King had probable cause to believe that the object he felt was rock cocaine.

In sum, as King was justified by *Terry* to stop and frisk defendant and, further, as he had probable cause to believe the object felt in defendant's pocket was rock cocaine, seizure of the substance was proper under the "plain touch" doctrine. Thus, we conclude that defendant's motion to suppress should have been denied.

We therefore affirm the judgment of the appellate court, which reversed the trial court and remanded the cause for further proceedings.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

Because I believe that the so-called "plain touch" doctrine violates article I, section 6, of the Illinois Constitution, which protects citizens against unreasonable searches, I respectfully dissent.

Before turning to the merits of the "plain touch" doctrine, I note my disagreement with the majority's conclusion that the Illinois Supreme Court, in interpreting the search and seizure clause of the Illinois Constitution, is bound to follow the decisions of the United

States Supreme Court which interpret the search and seizure clause of the Federal Constitution. There is no reason for deference in this area of constitutional interpretation. It would be similarly unsupportable to suggest that the United States Supreme Court, in interpreting a provision of the Federal Constitution, is bound by decisions of the Illinois Supreme Court which interpret a similar provision of the Illinois Constitution. Regardless of the language employed in the two documents, they are separate and distinct. The United States Supreme Court has the responsibility to interpret the Federal Constitution; the Illinois Supreme Court has the responsibility to interpret its State constitution. These are nondelegable duties.

The "plain touch" doctrine, a purported extension of the "plain view" doctrine, cannot withstand scrutiny. The "plain view" doctrine permits a law officer to seize contraband in plain view. The "plain touch" doctrine, on the other hand, permits a law officer to seize contraband detected through the sense of touch during the course of a weapons patdown search. It thus allows a law officer to seize anything as long as he is able to contend that he could identify the contraband by merely touching the suspect's clothing. Realistically, no matter how absurd or unsupportable such a contention may be, a defendant will not be able to successfully challenge it. The "plain touch" doctrine will encourage officers to investigate any lump or bulge in a person's clothing or pockets that arouses their curiosity during the course of a patdown search. If the item turns out to be contraband, then its seizure can be retrospectively justified. If it turns out to be something else, then there is no case and the matter ends there. In the interim, a citizen is subject to an unwarranted intrusion into his personal privacy far beyond the intrusion contemplated by the weapons patdown search.

Governance involves choices. Every expansion of government power is a diminution of individual liberty. A balance must be struck between lawlessness and personal freedom. Some restrictions on liberty are necessary in order to have a society that is relatively free from crime and predation. The current obsession is to eliminate illicit drug use. There is no question, however, that under the so-called war on drugs, personal freedoms and liberties are being trampled. While I may deplore the marketing and use of illicit drugs, as well as the undesirable personal and social problems that flow therefrom, I believe that the pendulum has swung too far in the area of law enforcement and that the assault on our basic liberties and freedoms by government itself has become a far more serious and potentially destructive social problem.