STATE OF CONNECTICUT *v.* ROY GUBITOSI, JR.
(14690)

Dupont, C. J., and Landau and Freedman, Js.

Argued September 25—officially released October 22, 1996

*Catherine E. Teitell,* for the appellant (defendant).

*Ronald G. Weller,* with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Nicholas J. Bove, Jr.,* for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a plea of nolo contendere; see General Statutes § 54-94a;[1] to possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a).[2] On appeal, the defend-

---

[1] General Statutes § 54-94a provides in pertinent part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal . . . . The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ." See also Practice Book § 4003.

[2] General Statutes § 21a-277 provides in pertinent part: "Penalty for illegal manufacture, distribution, sale, prescription, dispensing. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second

ant claims that the trial court improperly denied his motion to suppress evidence of drugs seized by the police during a warrantless search of his person.

The trial court found the following facts. On October 12, 1994, the police received a call from a citizen informant in Bridgeport. The informant stated that he observed the defendant in and around a car, that the defendant appeared to be "drunk or stoned," and that the hood of the car was up and he thought the defendant was going to "take it apart." Officer Carl O'Ravitz of the Bridgeport police department responded to a call from the police dispatcher that a male was "stripping" a car.

Upon arriving at the scene, O'Ravitz observed the defendant in a car on the passenger side of the front seat with the passenger side door opened. He was bending over doing something near the floor. As O'Ravitz and the defendant simultaneously exited their respective cars, O'Ravitz observed that the defendant was nervous, talking very fast, seemed dazed, and appeared to be under the influence of something. O'Ravitz asked the defendant to put his hands on the roof of the car and, before doing so, the defendant hesitated. With his gun drawn, O'Ravitz, concerned for his safety, conducted a patdown of the defendant for weapons. In the course of conducting his patdown of the defendant, O'Ravitz felt a large object in the defendant's pocket, which he immediately concluded contained crack vials. O'Ravitz reached into the defendant's pocket and seized 111 crack vials and, upon further investigation, discovered glassine envelopes containing narcotics. The defendant was then arrested.

offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, and be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . ."

The defendant moved to suppress the narcotics that had been seized from him on the ground that the narcotics had been discovered during an illegal search. The trial court denied the defendant's motion to suppress the narcotics, finding that O'Ravitz did not violate any constitutional prohibitions either in the stop and seizure, the protective patdown search for weapons, or in his subsequent search of the defendant's pockets.

On appeal, our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is "clearly erroneous in view of the evidence and pleadings in the whole record . . . ." Practice Book § 4061; *State* v. *Oquendo*, 223 Conn. 635, 645, 613 A.2d 1300 (1992); *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992). The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. *State* v. *Oquendo*, supra, 645; *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991).

Applying this standard of review, we conclude that the trial court's findings and conclusions are legally and logically consistent with the evidence and, thus, are not clearly erroneous.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

[3] In his brief, the defendant argues that the "plain feel" doctrine is unconstitutional under our state constitution and cites *State* v. *Trine*, 37 Conn. App. 561, 657 A.2d 675 (1995). After the defendant's brief was filed, our Supreme Court reversed *Trine* and adopted the "plain feel" doctrine. *State* v. *Trine*, 236 Conn. 216, 234, 673 A.2d 1098 (1996).

The defendant also claims under the federal constitution that O'Ravitz exceeded the permissible bounds of *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), by "flexing his fingers" during the patdown. We disagree. In *Minnesota* v. *Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), the United States Supreme Court adopted the "plain feel" doctrine, concluding that if during a patdown an object's identity is "immediately apparent," the search and subsequent seizure is constitu-

---

tional. In our case, O'Ravitz testified that when he first felt the object in the defendant's pocket he knew it to be crack vials. Because the identity of the object was "immediately apparent," O'Ravitz's search of the defendant was within the permissible bounds of *Terry*.