713 A.2d 45

**In the Interest of S.J.**

**Appeal of S.J.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1996.

Decided May 19, 1998.

638

John W. Packel, Linda A. Peyton, Philadelphia, for S.J.

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

NIGRO, Justice.

This is an appeal from an order of the Superior Court which affirmed the trial court's denial of Appellant's motion to suppress evidence. For the reasons which follow, we reverse.

■ In reviewing a suppression court's ruling, we are bound by those factual findings of the suppression court which are supported by the record. *Commonwealth v. Slaton,* 530 Pa. 207, 208, 608 A.2d 5, 5 (1992); *Commonwealth v. James,* 506 Pa. 526, 533, 486 A.2d 376, 379 (1985); *Commonwealth v. Lark,* 505 Pa. 126, 129, 477 A.2d 857, 859 (1984).

In the instant case, the trial court made the following findings of fact. At approximately 6:40 p.m. on March 29, 1994, while on routine patrol in a high crime area, Officer Michael Kelly noticed a group of twelve males standing on a street corner. As he passed the street corner, Officer Kelly detected the odor of marijuana. He then drove around the block to get a closer look and observed several members of the group smoking marijuana. After exiting his patrol car and approaching the group, the group began to disband and Officer Kelly noticed that Appellant was trying to "worm himself to the front of the [group] so he wouldn't be noticed...." N.T. June 21, 1994, at 10. The group then dispersed and Officer Kelly stopped Appellant as he attempted to depart.

Detecting a strong odor of marijuana on Appellant, Officer Kelly brought Appellant back to the patrol car and patted down the outside of his clothes. During the pat-down, Officer Kelly felt a hard chunky substance which he immediately knew to be cocaine.[1] Officer Kelly then reached into Appellant's pocket and removed thirty-six plastic bags filled with crack cocaine.

On June 21, 1994, the trial court denied Appellant's motion to suppress the physical evidence. The trial court subse-

1. We note that the parties dispute whether Officer Kelly's testimony supports the conclusion that he immediately recognized that the object in Appellant's pocket was cocaine. In light of our resolution of this case, we need not address this issue.

quently adjudicated Appellant delinquent on the charge of knowing and intentional possession of a controlled substance [2] and placed him on intensive drug and alcohol probation. On August 14, 1995, the Superior Court issued a Memorandum Opinion affirming the trial court's order.

Appellant then filed a Petition for Allowance of Appeal with this Court. We granted allocatur to determine: (1) whether the initial stop and subsequent frisk were justified; and (2) if the stop and frisk were lawful, whether the seizure of cocaine from Appellant's pocket during the frisk was permissible under Article I, Section 8 of the Pennsylvania Constitution.

 In order to reach the issue of the frisk, we must preliminarily address the nature of the stop and whether Officer Kelly actually subjected Appellant to a custodial, rather than an investigative, detention.[3] Appellant contends that he was subjected to a custodial rather then an investigative detention and that Officer Kelly lacked the requisite probable cause to support such a detention.[4] Appellant claims that he

2. 35 P.S. § 780–113.

3. There are three categories of interaction between citizens and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. See Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Commonwealth v. Rodriquez, 532 Pa. 62, 614 A.2d 1378 (1992).

Commonwealth v. Ellis, 541 Pa. 285, 293–94, 662 A.2d 1043, 1047–48 (1995)(footnote omitted).

4. It is well-settled that police must have probable cause to effect a lawful arrest or custodial detention. Commonwealth v. Rodriquez, 532 Pa. 62, 614 A.2d 1378 (1992).

was subjected to a custodial detention because Officer Kelly transported him from the location of the stop to his police cruiser prior to patting him down.

■ The factors typically considered in determining whether a detention is investigative or custodial are:

the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

*Commonwealth v. Gommer,* 445 Pa.Super. 571, 581, 665 A.2d 1269, 1274 (1995) (citations omitted), *appeal denied,* 546 Pa. 676, 686 A.2d 1308 (1996).

■ Instantly, there is no evidence that Appellant was transported without his consent or that he was subjected to a lengthy detention. Further, although Appellant asserts that Officer Kelly's cruiser was located "some distance away," Pet.'s Br. at 13, he points to no evidence of record which would indicate that the cruiser was located an appreciable distance from the location of the initial stop. Under these circumstances, we find that Officer Kelly's conduct was not sufficiently coercive to elevate the detention from investigative to custodial in nature. *See Ellis; Gommer.*

■ The focus of the analysis is thus whether the investigatory stop of Appellant was justified. It is well-settled that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Appellant argues that Officer Kelly lacked the requisite reasonable suspicion to justify the investigatory stop

because he was unable to specifically identify Appellant as one of the individuals he saw smoking marijuana. We disagree.

Under the circumstances of this case, Officer Kelly reasonably concluded that criminal activity was afoot. During the course of his patrol of a high crime area in which he had previously made six arrests involving drug-related activity, Officer Kelly detected the odor of marijuana in the vicinity of a group of men standing on a street corner. Upon closer inspection, Officer Kelly observed members of the group smoking marijuana. When Officer Kelly approached, Appellant attempted to hide among the other members of the group. Although Officer Kelly could not state with certainty whether Appellant was one of the individuals smoking marijuana, Officer Kelly's actual observance of illegal activity among Appellant's companions, combined with Appellant's suspicious behavior and Officer Kelly's knowledge that this was a high crime area known for drug activity, provided him with the requisite reasonable suspicion to conduct an investigatory stop of Appellant. *See Melendez, Berrios, Terry.*

Having concluded that the investigatory stop was proper, we now turn to the issue of whether the subsequent frisk was justified. Appellant argues that even if the investigatory stop was justified, Officer Kelly lacked the requisite reasonable suspicion to justify the subsequent protective frisk. We find Appellant's argument persuasive.

 If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the suspect which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. *See Melendez,* 544 Pa. at 329 n. 5, 676 A.2d at 228 n. 5 (1996); *Berrios,* 437 Pa. at 341, 263 A.2d at 343 (1970); *Terry,* 392 U.S. at 27, 88 S.Ct. 1868 (1968).

 The record herein is devoid of any evidence indicating that Officer Kelly had reason to believe Appellant was armed and dangerous. There was no testimony that Appellant's clothing had any unusual bulges or any testimony that Appel-

lant made any furtive movements giving rise to Officer Kelly's suspicions that Appellant was armed and dangerous. The Officer's statement that he patted Appellant down for his own safety does not rise to the level of particularized or reasonable suspicion that the Appellant was armed and dangerous. The absence of any specific, articulable facts establishing that Appellant was armed and dangerous renders the frisk unlawful.[5]

Having determined that the pat-down search of Appellant was unjustified, that finding is dispositive of this case and we need not address whether the cocaine found in Appellant's pocket during the frisk was valid under Article I, Section 8, of the Pennsylvania Constitution. The order of the Superior Court is reversed and the case is remanded with the direction to grant Appellant's motion to suppress.

CAPPY, J., files a concurring and dissenting opinion.

CASTILLE, J., files a dissenting opinion in which NEWMAN, J., joins.

CAPPY, Justice, concurring and dissenting.

Although I agree with the majority in reversing the decision of the Superior Court, I reach that result by a different path. First, I do not agree that the officer's decision to frisk appellant violated the parameters of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Second, as I find the frisk was permissible, I would go on to reach the question of

5. Relying on *Commonwealth v. Patterson*, 405 Pa.Super. 17, 22, 591 A.2d 1075, 1078 (1991)(holding that court may take judicial notice of the fact that drug dealers are likely to be armed and dangerous), the Superior Court found that once Officer Kelly was able to conclusively determine that drug-related activity was taking place, it was reasonable for him to believe that the participants might be armed and dangerous. The stop and frisk in *Patterson* took place in the middle of the night in the back alley entrance of a reputed crack house, and defendant therein was under investigation for narcotics distribution. In the instant case, Officer Kelly did not possess the requisite finding, as in *Patterson*, that Appellant was involved in a drug transaction that Officer Kelly was investigating. Because the facts of this case are clearly distinguishable from *Patterson*, we decline to address whether judicial notice should be taken that drug dealers are armed and dangerous.

whether the "plain feel" doctrine as enunciated in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), is consistent with the privacy interests provided to the citizens of this Commonwealth under Article I, Section 8 of the Pennsylvania Constitution; this question I would answer in the affirmative. Thus, there is a need to reach the third question: was the seizure which occurred herein violative of the "plain feel" doctrine. As I would find the seizure here did violate the "plain feel" doctrine enunciated in *Dickerson,* I, too, would reverse the decision of the Superior Court.

Beginning with my first point of departure from the analysis of the majority, I find the frisk of appellant was supported by sufficient reasonable suspicion so as to comply with the requirements of *Terry.* Unlike the majority I read *Terry,* and the line of Pennsylvania cases following the rationale set forth therein, to permit a stop *and* frisk unless the officer's actions can be seen as clearly unreasonable under the circumstances known to the officer at the time of the stop. As the *Terry* court recognized, the interaction occurring between an officer on the beat and a citizen in a typical stop and frisk situation requires the officer to make a swift on-the-spot decision assessing the potential nature of criminal activity, the conduct of the suspect, the potential danger to others in the area and, of course, the potential danger to the officer. Given the immediacy of the situation, I do not read *Terry* to require the officer to specify that the suspect was possibly reaching for a weapon, or that the officer observed a bulge. Rather, I read *Terry* to require that the officer set forth reasonable suspicion to support the decision to frisk. Reasonable suspicion is more than a hunch but less than probable cause. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 905. Based upon my reading of the facts in this case, as found by the trial court, this officer set forth sufficient particular information to satisfy the reasonable suspicion requirement of *Terry.*

The officer, working alone, approached a large group of young men whom he knew by his own observation to be under the influence of marijuana; thus, the suspicion of criminal activity taking place was affirmatively established. The en-

counter took place in a high crime area and the appellant was acting in a furtive manner attempting to evade the officer's attention. Under these circumstances I would find that the officer's assessment of the situation—he was alone, there was a large group of males under the influence of marijuana, and the appellant was behaving in a suspicious manner as if he had something to hide—provided sufficient reasonable suspicion to justify the frisk of appellant for the safety of the officer.[1]

1. I note that the Superior Court in addressing the frisk question presented on these facts relied upon their previous decisions in *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991) and *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993). In those cases, and their progeny, the Superior Court has created a special exception to *Terry* for stop and frisk situations involving drug activity. The Superior Court has taken judicial notice of the fact that drug dealers are likely to be armed and dangerous. From that premise the Superior Court then concluded that once an officer has a reasonable belief that drugs are involved, he may frisk for weapons without further articulating a reason for the frisk.

I would reject this judicial creation by the Superior Court and overrule *Patterson* and its progeny. The standards enunciated in *Terry* provide a sufficient basis to protect police officers in their battle against criminal activity. Where an officer can articulate a reasonable basis for the frisk it is permitted. To carve out an exception to this requirement for all drug cases would completely dissipate the protection for our citizens to be free of unwarranted searches which necessarily factors into the *Terry* analysis. Balancing the privacy rights of our citizens against the need for the police to be free of the limitations of *Terry* when investigating possible criminal activity of a drug related nature, I believe that the balance tips in favor of privacy.

I further note that the United States Supreme Court in *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), rejected a per se exception to the knock and announce requirement of the Fourth Amendment for cases involving the execution of warrants in drug related investigations. The Court there stated:

[the] difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a *per se* exception were allowed for each category of criminal investigation that included a considerable-albeit hypothetical-risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless.

*Id.* 520 U.S. at ——, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. Although not directly on point as the *Richards* case dealt with execution of a warrant and this case deals with a *Terry* frisk, I find the rationale of the United States Supreme Court eminently persuasive.

As the Court in *Terry* stated in setting forth the standard by which all such encounters are to be measured: "[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry* 392 U.S. at 21–22, 88 S.Ct. at 1879, 20 L.Ed.2d at 906. Based upon the facts available to this officer at the time, I would conclude that the action taken was appropriate. As I cannot agree with the majority that the officer here violated *Terry,* I am compelled to dissent from this portion of the majority opinion.

Given my departure from this holding of the majority, I would then go on to reach the question of whether the "plain feel" doctrine is cognizable under the Pennsylvania Constitution. In *Minnesota v. Dickerson,* the United States Supreme Court held that the "plain feel" doctrine was a logical and reasonable convergence of a *Terry* pat-down and the plain view doctrine of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The Court in *Dickerson* reasoned as follows:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that were in the plain-view context.

*Id.* 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.

The question presented to this court is whether the rationale of *Dickerson* is compatible with the law of search and seizure unique to Pennsylvania. As this Court recognized in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), the Pennsylvania Constitution can provide an additional level of protection for the citizens of this Commonwealth beyond the minimum set forth in the United States Constitution. In analyzing specific claims for greater protection under the Pennsylvania Constitution, this court has adopted a four-prong

analysis to aid in this undertaking. These four prongs are: (1) the text of the Pennsylvania Constitutional provision; (2) the history of the provision as revealed through case law; (3) related case law from other states and; (4) policy considerations unique to Pennsylvania. *Edmunds,* 526 Pa. at 390, 586 A.2d at 895.

As this court has acknowledged in previous cases reviewing Article I, Section 8, the language of this provision is similar to the language of the Fourth Amendment to the United States Constitution.[2] The similarity in phraseology of these two provisions is not conclusive as to their distinct interpretations. Thus, it is necessary to move on to a consideration of Pennsylvania case law interpreting Article I, Section 8 as it relates to the specific questions presented in the instant case. At issue here is whether Pennsylvania law, with its historical emphasis upon individual privacy, is compatible with the rationale of *Dickerson,* which superficially implies a broader sweep to the traditional *Terry* encounter than this court has previously condoned.

Our analysis here must begin with *Terry* and its application under Pennsylvania law. Pennsylvania embraced the stop and frisk concept of *Terry* in *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). Consistently therefrom this court has steadfastly followed the requirements of *Terry* and approved police encounters of that nature where the officer making the stop has been able to point to specific and articulable facts which would lead a reasonably prudent person in that position to suspect criminal activity was afoot and that the suspect may

2. The Fourth Amendment of the United States Constitution provides:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 8 of the Pennsylvania Constitution provides:
> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

be armed and dangerous. *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970).[3]

Pennsylvania courts have refused to expand *Terry* to permit any greater infringement upon personal privacy beyond the stop and frisk. In *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992), this Court rejected the Commonwealth's efforts to expand *Terry* to embrace a new level of police citizen interaction termed justifiable detention. The Commonwealth strenuously argued that this expanded opportunity for the police to detain citizens beyond the time necessary to perform a stop and frisk would greatly enhance the ability of the police to investigate crime without requiring a full-blown arrest. Recognizing the public right to deter criminal activity and balancing that right against the individual right to be free of police interference absent reasonable suspicion or probable cause, this court refused to expand *Terry.*

Appellant here urges the court to follow the philosophy of *Rodriquez* and reject *Dickerson* as another attempt to expand *Terry* in a manner inconsistent with the privacy rights of individuals, so jealously guarded under Pennsylvania law. I find appellant's fears unjustified in this instance. The rationale of *Dickerson* does not support any greater intrusion into the personal privacy of an individual than already tolerated by our endorsement of *Terry.* Once an officer has legitimately seized an individual for the purpose of investigating possible criminal activity and, where warranted, commenced a pat down of that individual for protective purposes, the scope of the encounter has been delineated. Whether during that investigative pat down the officer feels a gun, knife, set of brass knuckles, outline of probable stolen jewelry, or similarly identifiable contraband, the level of interference with the individual will not be altered. A pat down is only that, a pat down of the individual's outer garments. Thus, I can find no

**3.** I note that the majority cites *Berrios* and *Melendez* in support of its conclusion that a pat down can only occur where the officer finds reasonable suspicion that the suspect was armed. *Melendez* and *Berrios,* however, only dealt with the officer's initial decision to stop the suspect.

precedent in Pennsylvania law which would militate against an application of *Terry* within the parameters of the "plain feel" doctrine.

As the *Dickerson* Court recognized "plain feel" merges the concepts of *Terry* with the concepts embodied in the plain view doctrine. The plain view doctrine has long been a recognized legal concept. As the United States Supreme Court held in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968):

> It has long been settled that objects falling in the plain view are subject to seizure and may be introduced in evidence. *Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623 [1634– 35], 10 L.Ed.2d 726, 743 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).*

As the *Harris* Court acknowledged, when an officer is lawfully in a position to view an item, the incriminating nature of which is immediately apparent, the officer may legitimately seize the item. *Id.,* 390 U.S. at 236, 88 S.Ct. at 994, 19 L.Ed.2d at 1069 (1968). The plain view doctrine does not interfere with the protections against unwarranted searches and seizures provided by the Fourth Amendment. *Id.* As in the case of *Terry,* Pennsylvania has without alteration embraced and adhered to the logic of the plain view doctrine. *See Commonwealth v. Jackson,* 461 Pa. 632, 337 A.2d 582 (1975). No particular privacy interests unique to Article I, Section 8 of our Constitution dictate a divergent path from the concept of plain view.

As the *Dickerson* Court recognized the convergence of *Terry* with the principles of plain view logically results in acceptance of the "plain feel" doctrine. Given the history of our case law in Pennsylvania, which has always followed *Terry* and *Harris,* there is no basis in our precedents to reject *Dickerson.*

Looking next to the consideration of this question by our sister states, we find almost unanimous adoption of *Dickerson.* As we have previously stated, it is not the numerical weight of states which we consider in our analysis, but rather, the

rationale within their opinions on a given issue. *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996).

Only New York State has rejected the "plain feel" doctrine, and that was in a decision handed down prior to the decision of the United States Supreme Court in *Dickerson.* In *People v. Diaz,* 81 N.Y.2d 106, 595 N.Y.S.2d 940, 612 N.E.2d 298 (1993), the court found the sense of touch to be less reliable than the sense of sight. Therefore, the *Diaz* court opined that given the disparity in sensory ability "plain feel" was not a logical extension of plain view. The *Diaz* court also considered the potential for abuse which could be created by allowing police to pretextually expand weapons searches as a hunt for other contraband as a reason for rejecting the "plain feel" doctrine.

Other states considering "plain feel" have found the concerns articulated by the *Diaz* court legitimate, but not preclusive to adopting "plain feel." Generally the following states have embraced "plain feel" by accepting the plain view analogy and deciding on a case-by-case basis for pat downs which exceeded the legitimate scope of a *Terry* stop and frisk. *See Allen v. State,* 689 So.2d 212 (Ala.Crim.App.1995); *State v. Millan,* 185 Ariz. 398, 916 P.2d 1114 (1995); *Dickerson v. State,* 51 Ark.App. 64, 909 S.W.2d 653 (1995); *People v. Dickey,* 21 Cal.App.4th 952, 27 Cal.Rptr.2d 44 (1994); *State v. Gubitosi,* 43 Conn.App. 448, 683 A.2d 419 (1996); *Hicks v. State,* 631 A.2d 6 (Del.1993); *Dickerson v. United States,* 677 A.2d 509 (D.C.1996); *Jones v. State,* 648 So.2d 669 (Fla.1995); *Seaman v. State,* 214 Ga.App. 878, 449 S.E.2d 526 (1994); *People v. Mitchell,* 165 Ill.2d 211, 209 Ill.Dec. 41, 650 N.E.2d 1014 (1995); *Stone v. Indiana,* 671 N.E.2d 499 (Ind.App.1996); *State v. Wonders,* 23 Kan.App.2d 287, 929 P.2d 792 (1996); *Commonwealth v. Crowder,* 884 S.W.2d 649 (Ky.1994); *State v. Matthews,* 654 So.2d 868 (La.App.1995); *State v. Smith,* 345 Md. 460, 693 A.2d 749 (1997); *People v. Champion,* 452 Mich. 92, 549 N.W.2d 849 (1996); *State v. Rushing,* 935 S.W.2d 30 (Mo.1996); *State v. Chitty,* 5 Neb.App. 412, 559 N.W.2d 511 (1997); *State v. Benjamin,* 124 N.C.App. 734, 478 S.E.2d 651 (1996); *State v. Woods,* 113 Ohio App.3d 240, 680 N.E.2d 729

(1996); *State v. Abrams,* 322 S.C. 286, 471 S.E.2d 716 (1996); *State v. Buchanan,* 178 Wis.2d 441, 504 N.W.2d 400 (1993).

Having reviewed the opinions of our sister states on the issue of "plain feel," I believe the concerns raised by the New York minority position are insufficient to preclude Pennsylvania from following the lead of the United States Supreme Court and the majority of our sister states. I would agree with the majority of jurisdictions that any potential abuses of the "plain feel" doctrine can be addressed by the courts on a case-by-case basis.

Turning finally to policy considerations unique to Pennsylvania, I find none which preclude our adoption of the "plain feel" doctrine. The major areas of concern the "plain feel" doctrine brings to the fore are potential abuses by officers on the street, and, the limitations of the sense of touch. I note that these very concerns were advanced by the appellants in *Terry.* Just as the United States Supreme Court stated then, I would find here that the potential for abuse is outweighed by the very real danger officers face on the streets every day. As to the limitations of the sense of touch, that question begs a factual answer best dealt with on a case-by-case basis. *See Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908–09.

As Pennsylvania has long embraced the plain view concept and the necessity of *Terry* pat downs when premised upon reasonable suspicion of criminal activity, I find no policy reasons that would preclude adoption of the "plain feel" doctrine, which simply unites plain view and *Terry.* I would find Pennsylvania possesses no particular policy interest that would be interfered with by embracing the "plain feel" doctrine.

Having expressed my reasons for following the decision in *Dickerson,* I now turn to an application of the "plain feel" doctrine to the instant case. Based upon the testimony of the officer at the suppression hearing I would find that the search as conducted exceeded the scope of a permissible pat down. The officer specifically testified that he knew the hard object

was not a weapon but after squeezing it he was certain it was crack cocaine. Manipulation of any object detected during a pat down, once the officer is satisfied that the object is not a weapon, is unacceptable. To permit such poking, squeezing and prodding, would violate the limits of the pat down and allow the officer to increase the scope of the search without legal justification. The officer's actions in the instant case are identical to the actions of the officer in *Dickerson*. As the *Dickerson* court noted:

> [T]he officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"—a pocket which the officer already knew contained no weapon. . . . Although the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

*Id.*, 508 U.S. at 378–79, 113 S.Ct. at 2138–39, 124 L.Ed.2d at 347–48.

Given the facts of the instant case and their striking similarity to the facts of *Dickerson*, I would find that the officer here violated the parameters of a *Terry* frisk in manipulating the object in appellant's pocket once he ascertained that the object was not a weapon. Thus, although I would endorse *Dickerson* under Pennsylvania law, in applying that law to this case I would find that the scope of the "plain feel" doctrine was violated and for that reason reverse the decision of the Superior Court.

Accordingly, for the reasons set forth herein, I dissent from the opinion of the majority, but concur in the decision to

reverse the Superior Court, although I reach that result on other grounds.

CASTILLE, Justice, dissenting.

I join the portion of Justice Cappy's dissenting opinion which concludes that the officer's decision to frisk appellant was not violative of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I further agree with Justice Cappy that the "plain feel" doctrine as enunciated in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), is consistent with the privacy protections provided by Article I, Section 8 of the Pennsylvania Constitution and should therefore be adopted in this Commonwealth. However, unlike Justice Cappy, I believe that the officer's conduct was proper and within the parameters of the "plain feel" doctrine. Therefore, I dissent separately.

> The United States Supreme Court held in *Dickerson* that: If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at 375–76, 113 S.Ct. 2130. In *Dickerson*, two police officers stopped and frisked the suspect after observing him acting suspiciously while departing from an apartment building known for drug sales. The search revealed no weapons, but the officer who conducted the search testified that as he patted down the front of the suspect's body, he felt a small lump in the front pocket. The officer "examined it with [his] fingers and slid it and it felt to be a lump of crack cocaine in cellophane." *Id.* at 369, 113 S.Ct. 2130. The officer reached into the suspect's pocket and retrieved a small plastic bag containing crack cocaine. After noting that the propriety of the stop was not at issue, the United States Supreme Court addressed the issue of whether the officer who conducted the

search was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in the suspect's jacket was contraband. The record revealed that the officer did not immediately upon initial contact recognize the lump in the suspect's pocket as being crack cocaine. Rather, the officer determined that the lump was contraband after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"—a pocket which the officer already knew contained no weapon. *Id.* at 377, 113 S.Ct. 2130. Thus, the United States Supreme Court concluded that the officer's continued exploration of the suspect's pocket after having realized that it contained no weapon was unrelated to the sole justification of the search under *Terry* : the protection of the police officer and others nearby. Accordingly, the Court held that the search of the suspect's pocket was improper. Thus, pursuant to *Dickerson,* an officer may lawfully seize contraband found on a suspect provided that the officer has reasonable suspicion to search the suspect for weapons and the officer immediately recognizes the item as contraband without conducting some further search of the object.

In the instant case, unlike the particular facts in *Dickerson,* the identity of the cocaine was immediately apparent to the officer. The officer testified as follows:

Q. Officer, when you—I'm sorry. When you say you were patting him down, were you patting down the outside of the clothing or were you reaching inside his clothing?

A. Patting down the outside of the clothing. As I was working my way down, came to the right pocket, outer pocket, where I felt a hard chunky substance in plastic, **which I knew that it was crack cocaine.**

. . .

Q. Have you felt that before?

A. Yes, I did.

Q. In what capacity?

A. In other arrests.

Q. And what has that substance been in other arrests?

A. Cocaine, alleged form of rock cocaine.

Q. Okay. Now, when you patted that substance, you said that you — well, what did you think when you patted it?

A. **I thought it was cocaine right off the bat.**

Q. And how long did it take you to reach that conclusion?

A. **Instantly, as soon as I felt it.**

Notes of Testimony, Suppression Hearing, (N.T.) at 11–12 (emphasis added). The officer further testified that he was "kind of squeezing" the pocket area before he asked appellant if there were any needles in the pocket. N.T. at 13.

On cross-examination, the officer testified as follows:

Q. Officer, is it fair to say that once you squeezed the items, you could determine that it was some type of what you described or what you believed to be cocaine?

A. What I believed it was?

Q. Yes.

A. Yes, I did.

Q. After that squeezing, then you took the items out of his pocket; is that correct?

A. That's correct, after asking the defendant again if he had any needles in that pocket.

N.T. at 14–15.

I do not believe that the officer here exceeded the parameters of the "plain feel" doctrine as enunciated in *Dickerson.* The officer had over four years of experience and testified that it was instantly apparent to him that the item he felt during the pat-down of appellant's pocket was cocaine. He did not slide the object, roll it between his fingers or otherwise manipulate it. Although the officer acknowledged that he was "kind of squeezing" the cocaine, unlike the officer in *Dickerson,* he was already aware "right off the bat" that the item was cocaine. Further, the officer was still in the process of frisking appellant for weapons. He had not already concluded that no weapons were present. Therefore, *Dickerson* does not mandate suppression under these circumstances.

A slight squeeze is inherent in a pat-down search, for it is through the fingers that the human body exercises the tactile

sense, much as a non-sighted individual "sees" a person's face through the fingers placed slightly upon the face or "reads" by Braille. In order to perform a real-life pat-down on the street, an officer does not simply extend his hands in a stiff and robotic fashion. A slight amount of hand-cupping and finger pressure is necessary for an officer to perform a pat down in order to be able to ascertain in his own mind whether an object is a weapon. The officer *sub judice* did not squeeze the item and roll it between his fingers as did the officer in *Dickerson*. Rather, the squeezing was immediate and slight, consistent with a permissible pat-down search. Surely the United States Supreme Court did not intend for officers to conduct pat-down searches with their fingers stiff and straight as if fused at the knuckles. Such a result would be not only absurd, but would be inconsistent with the reasoning of *Terry* which permits a thorough and careful pat-down for weapons in order to protect the safety of the officer and the public. *Terry*, 392 U.S. at 29, 88 S.Ct. 1868.

Other courts construing similar factual patterns have refused to invalidate a pat-down search pursuant to *Dickerson* where the officer slightly squeezed the contraband. In *State v. Smith*, 329 S.C. 550, 495 S.E.2d 798 (1998), the court held that although there was testimony in the record that the officer squeezed the outside of the defendant's jacket, it was not sufficient to invalidate the seizure under *Dickerson*. The officer testified that he squeezed the outside of the defendant's jacket and squeezed around the package. He stated that after doing this, "there was no doubt in my mind it was marijuana after feeling it." The officer also admitted that he felt the package through the jacket with his fingertips, the palm of his hand, and the entire hand. He testified that the first time he felt the package, it was obvious to him that it was a bag, and that he did not have to determine the contents of the package because he already knew what it was when he felt it. The court reasoned that:

> As such, we find this case is distinguishable from *Dickerson* in that [the officer] detected the drugs during the initial search for weapons rather than a further search. Other

than the squeeze described by [the officer], his testimony indicates he determined the object was contraband as soon as he felt it. Unlike the patdown in *Dickerson*, [the officer's] identification of the substance did not require additional squeezing or manipulation.

*Id.* 495 S.E.2d at 803.

Similarly, here the officer's detection of the drugs occurred during the initial search of appellant for weapons. Like the officer in *Smith*, the officer here determined that the object was contraband as soon as he felt it. The identification of the substance did not require additional squeezing or manipulation. Accordingly, the officer did not exceed the bounds of a permissible search pursuant to the "plain feel" doctrine. *See also Andrews v. State*, 221 Ga.App. 492, 471 S.E.2d 567 (1996) (seizure of a "cookie" of crack cocaine under the "plain feel" doctrine was valid where the officer squeezed the object in the defendant's shorts to confirm his initial belief that it was crack cocaine); *In the Interest of B.C.*, 453 Pa.Super. 294, 683 A.2d 919 (1996) (seizure of a baggy containing packets of crack cocaine was justified under "plain feel" doctrine where the officer squeezed the suspect's pocket and immediately recognized the bulge as packets of a controlled substance); *Strickland v. State*, 923 S.W.2d 617 (Tex.Ct.App.1995) (officer's search for weapons did not exceed the bounds of *Terry* where he moved his fingertips across an object in the defendant's pocket, but did not extensively manipulate the defendant's pocket or its contents and immediately recognized the object as a crack pipe).

Accordingly, I would hold that the thirty-six bags of crack cocaine found on appellant are not suppressible. Since the majority's holding is to the contrary, I dissent.

NEWMAN, J., joins this dissenting opinion.