J-S80035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF L.B.-H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: L.B.-H., A MINOR | No. 493 MDA 2016 |

Appeal from the Adjudication of Delinquency February 22, 2016
in the Court of Common Pleas of Berks County
Juvenile Division at No(s): CP-06-JV-0000031-2016

BEFORE:  LAZARUS, J., STABILE, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED AUGUST 08, 2017**

L.B.-H., a minor, appeals from the dispositional order of February 22, 2016, following his adjudication of delinquency for possession of a firearm by a minor, firearms not to be carried without a license, and receiving stolen property.[1]  We reverse the dispositional order and remand for further proceedings.

On January 28, 2016, at 2:23 p.m., Police Officer Nathan Scott was on patrol in Exeter Township, Berks County.  *See* Notes of Testimony (N. T.), 2/11/16, at 3-4.  Officer Scott observed a car with the front passenger and rear windows tinted and five passengers inside, including a toddler and an infant.  *Id.* at 5, 7, 12-13.  As Officer Scott observed the windows, a front

---

[1] 18 Pa.C.S. §§ 6106(a)(1), 6110.1(a), 3925(a), respectively.

passenger looked at him, froze, and reached down toward the floorboard of the car. N. T. at 5-6. Officer Scott activated his lights and sirens, but instead of stopping immediately in a well-lit shopping center nearby, the car proceeded approximately 300 yards to a secluded area before coming to a stop. *Id.* at 7-8, 26.

On approach, Officer Scott noticed the steering column was broken and a screwdriver jammed in the ignition. *Id.* at 9. The car smelled of "fresh" marijuana. *Id.* at 9-10. Officer Scott requested license and registration, but the driver, I.S., replied that he had no license and no identification. *Id.* Officer Scott asked I.S. if there were any guns, drugs, or weapons inside the vehicle. *Id.* at 11. I.S. replied there was nothing on him and if there was anything in the car, it was not his. *Id.* at 11. I.S. gave consent to search the vehicle and Officer Scott called for backup. *Id.* at 11. When Officer Scott ran the tag of the vehicle, the computer indicated the car was not stolen. *Id.* at 19.

Officer Rocco DeCamillo arrived on the scene and formulated a plan to take all of the adults from the vehicle to frisk each passenger. *Id.* at 24. Officer DeCamillo assisted Officer Scott in removing the passengers, including a toddler and baby, from the car. *Id.* at 12, 23-24. Appellant, seated in the back right seat of the car, smoked a cigarette and appeared nervous and scared. *Id.* at 24. When Officer DeCamillo asked Appellant

why he was smoking in a car with two small children, Appellant did not make eye contact or respond.[2]  N. T. at 25.

Appellant was removed from the car.  *Id.* at 12.  Officer Scott began to frisk the car's occupants.  *Id.* at 13-14, 20.  Officer Scott felt a hard object in Appellant's right inner thigh, handcuffed Appellant, and asked Appellant what was in his pants.  *Id.* at 15.  Appellant informed the officer it was a gun.  *Id.* at 15.  From inside Appellant's underwear, Officer Scott recovered a firearm with six live rounds, including one in the chamber.  *Id.* at 15.

On February 3, 2016, Appellant filed a motion to suppress all evidence recovered from the frisk, arguing that the officers did not have reasonable suspicion to stop the car and that there was no basis for detaining Appellant or conducting a *Terry*[3] frisk.  Appellant's Motion to Suppress at 4-5.  On February 11, 2016, Appellant argued this motion before the suppression court, and averred that the police officers did not have individualized, reasonable suspicion to pat Appellant down.  N. T. at 28-29.  At the conclusion of testimony and argument, the suppression court held the matter under advisement and noted that in the event the motion was

---

[2] Appellant informed officers that he was seventeen years old, while he was actually fifteen years old.  It is unclear from the testimony at what point during the stop he told officers this or when they verified his age.  *Id.* at 12.
[3] *Terry v. Ohio*, 88 S. Ct. 1868 (1968).

denied, the testimony introduced at the hearing would be admitted during trial. *Id.* at 33-34.

On February 17, 2016, the suppression court issued its findings of fact and conclusions of law. It denied Appellant's motion, holding that the police officers did have reasonable suspicion to justify a *Terry* stop and frisk. The court adjudicated Appellant delinquent of possession of a firearm by a minor, firearms not to be carried without a license, and receiving stolen property. However, the court held that the Commonwealth had failed to prove Appellant's involvement with altering a firearm.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Herein, Appellant presents a single issue for our review:

Whether the trial court erred by denying [Appellant's] motion to suppress physical evidence where the police did not have individualized, reasonable suspicion that [Appellant] was armed and dangerous necessary to justify a *Terry* frisk, in violation of [Appellant's] rights under Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania and the Fourth and Fourteenth Amendments to the Constitution of the United States.

Appellant's Brief at 5 (internal footnote omitted).

Our standard of review for an appeal denying a motion to suppress is well settled.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

- 4 -

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

There is no dispute that Officer Scott conducted a lawful traffic stop, based upon a violation of the Motor Vehicle Code, namely, the tinting of the vehicle's windows. *See* 75 Pa.C.S. § 4524(e). Further, "following a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007). However, in the instant case, the question is whether or not Officer Scott properly conducted a pat-down search of Appellant after ordering him from the car. After reviewing the evidence, we conclude that Officer Scott did not possess a reasonable belief that Appellant was armed.

"The *Terry* 'stop and frisk' permits an officer to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal

activity may be afoot." ***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011) (citing ***Terry***, 88 S.Ct. at 1884). The ***Terry*** totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. ***Id.*** During such a stop, if an officer reasonably believes that his safety or the safety of others is threatened, he may conduct a limited pat-down search, or frisk, to determine whether the person is carrying a weapon. ***Id.*** These principles apply to all occupants of the stopped vehicle and not merely the driver. ***Id.***

If either the seizure or the search is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. ***Commonwealth v. Gibson***, 638 A.2d 203, 206-207 (Pa. 1994). The fundamental inquiry of a reviewing court must be an objective one, "namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate." ***Commonwealth v. Zhahir***, 751 A.2d 1153, 1156 (2000) (internal citation omitted). "*This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion.*" ***Commonwealth v. Reppert***, 814 A.2d 1196, 1204 (Pa. Super. 2002) (emphasis in original).

Here, Officer Scott stated that the officers performed a systematic frisk of every passenger:

> Q: So basically you were systematically going through and patting down everybody in the car? Or the police were?
>
> A: Correct.

Q: Okay. There wasn't anything individual about [Appellant] that they were patting him down? It was just – you were patting down everybody in the car?

A: Correct.

*See* N.T., 2/11/16, at 20-21.

Here, the testimony suggests that the officers conducted something akin to an automatic companion search. The "automatic companion rule" provides that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *Commonwealth v. Jackson*, 907 A.2d 540, 543–44 (Pa. Super. 2006) (citing *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971)). However, this Court has held that the automatic companion rule is unconstitutional. *Id.* at 544 (citing *Commonwealth v. Graham*, 685 A.2d 132, 136 (Pa. Super. 1996) (overturned on other grounds)).[4]

In *Jackson*, the defendant was seen in a high crime area engaging in a narcotics transaction prior to leaving officers' sight. *Jackson*, 907 A.2d at 541, 545. He was later located standing with a group of other men. *Id.* Officers lined the group up against a fence to check them for weapons, as the area was known for "violent reactions to the police." *Id.* at 545. During

---

[4] The record is silent as to whether the driver was arrested.

that time, the defendant twice attempted to flee, kicking a police officer in the knee. *Id.* at 541. He was taken into custody and searched. *Id.* On appeal, Jackson argued that police officers did not have specific, individualized facts that constituted reasonable suspicion or probable cause to search him. *Id.* The **Jackson** Court recognized that while a *per se* application of the automatic companion rule is unconstitutional, officers were able to articulate specific facts that allowed them to develop individualized suspicion that the defendant, a drug transaction suspect in an area known for violent reactions to police, might have been armed. *See Jackson*, 907 A.2d at 544-45.

In this case, according to the line of questioning above, it would appear that the officers were, indeed, conducting an automatic companion search. Here, however, the officer openly admitted in his testimony that there was nothing individualized about L.B.-H. that led police to search him. *See* N.T., 2/11/16, at 20-21. Accordingly, officers engaged in an unreasonable search. *Cf. Jacksonson*, 907 A.2d 544-45; *Graham*, 685 A.2d at 136.

However, even disregarding the automatic companion rule and the systematic search of the passengers, the instant frisk was still unconstitutional. We reiterate the importance of individualized suspicion and note that in the case of a self-protective search for weapons, "a police officer must be able to point to particular facts from which he could reasonably infer

that the individual was armed and dangerous." ***Commonwealth v. Pinney***, 378 A.2d 293, 296 (Pa. 1977).

Mere nervousness alone is insufficient to develop particularized suspicion. For example, in ***Reppert***, a police officer observed the defendant riding in the back seat of a car that displayed expired inspection and registration stickers. ***Reppert***, 814 A.2d at 1199. While following the car, the officer observed furtive movements of the defendant's head and shoulders. ***Id.*** After the officer effectuated a traffic stop, the defendant appeared "very nervous." ***Id.*** Based on these facts, the officer then conducted a search of defendant's person. ***Id.*** A suppression court denied the defendant's motion, but on appeal, a panel of this Court reversed, concluding that an officer's "assessment of nervous demeanor [is] *palpably insufficient* to establish reasonable suspicion of a citizen's involvement in criminal activity, even when viewed in combination with other indicia of potential criminal acts." ***Reppert***, 814 A.2d at 1206 (emphasis added); ***see also Commonwealth v. Cartagena***, 63 A.3d 294 (Pa. Super. 2013) (holding that, after lawful stop of defendant's vehicle for illegally tinted windows, officers did not have reasonable suspicion for a late night protective sweep of defendant's car despite defendant's extreme nervousness).

Here, the police officers identified no specific facts that would lead them to believe that Appellant was armed and dangerous. Officers noted

that Appellant appeared nervous, would not make eye contact, and did not speak to the police. However, the only evidence that could possibly point to the conclusion that Appellant was armed was the evasive answer of the driver in response to the question as to whether there were drugs or weapons in the car. While this answer is certainly evasive, and may give rise to the question of some contraband in the car, this information alone cannot reasonably provide the particularized, individual suspicion that *Appellant* was armed and dangerous. **Compare Reppert**, 814 A.2d at 1204, with **Jackson**, 907 A.2d at 545.

Furthermore, police officers testified that there was a smell of "fresh marijuana" in the car. Again, this may give rise to some suspicion of illegality. However, a frisk based upon the smell of marijuana alone has been ruled unconstitutional within this jurisdiction. **See In the Interest of S.J.**, 713 A.2d 45 (Pa. 1998). In that case, a police officer drove past a group of twelve males standing on a street corner and noticed the smell of marijuana. **Id.** at 48. After circling the block a second time, the officer noticed that several of the group appeared to be smoking marijuana. **Id.** The officer got out of the vehicle and approached the group, which began to disband after noticing him. **Id.** The defendant, particularly, attempted to hide himself amongst the group. **Id.** The police officer stopped the defendant, noted the strong smell of marijuana coming from him individually, and brought him back to the patrol car. **Id.** He then conducted

a pat-down frisk and discovered crack cocaine.  *Id.*  Supreme Court

suppressed this evidence, reasoning:

> [Defendant] argues that even if the investigatory stop was
> justified, Officer Kelly lacked the requisite reasonable suspicion
> to justify the subsequent protective frisk.  We find [defendant's]
> argument persuasive.
>
> If, during the course of a valid investigatory stop, an officer
> observes unusual and suspicious conduct on the part of the
> suspect which leads him to reasonably believe that the suspect
> may be armed and dangerous, the officer may conduct a pat-
> down of the suspect's outer garments for weapons.
>
> The record herein is devoid of any evidence indicating that
> Officer Kelly had reason to believe [defendant] was armed and
> dangerous.  There was no testimony that [defendant's] clothing
> had any unusual bulges or any testimony that [defendant] made
> any furtive movements giving rise to Officer Kelly's suspicions
> that [defendant] was armed and dangerous.  The Officer's
> statement that he patted [defendant] down for his own safety
> does not rise to the level of particularized or reasonable
> suspicion that the [defendant] was armed and dangerous.  The
> absence of any specific, articulable facts establishing that
> [defendant] was armed and dangerous renders the frisk
> unlawful.

*In the Interest of S.J.*, 713 A.2d at 47-48.

In the instant case, Officer DeCamillo pointed to the evasive answer by

the driver to justify his systematic pat-down of every occupant of the

vehicle.  This evasive answer about weapons or drugs, coupled with the

smell of marijuana, could very well give rise to the inference marijuana was

in the vehicle.  However, this does not automatically give rise to an

individualized suspicion that Appellant, a minor in the back seat of the

vehicle who had not spoken to the police nor made any furtive movements,

was presently armed and dangerous. **Compare Reppert**, 814 A.2d at 1204, with **Jackson**, 907 A.2d at 545.

Based upon the above, we cannot conclude that the officer possessed a reasonable suspicion to search Appellant's person. Thus, the suppression court erred in holding that Officer Scott possessed a reasonable belief that Appellant was armed. The search of his person was illegal, and accordingly, we reverse. **See Gibson**, 638 A.2d at 206-07.

Order of disposition reversed; case remanded; jurisdiction relinquished.

Judge Lazarus joins.

Judge Stabile files a dissenting memorandum.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/8/2017