2020 IL App (1st) 173005-U

No. 1-17-3005

Order filed September 18, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 154 |
| | ) | |
| RUSSELL ANTONIO JONES, | ) | Honorable |
| | ) | William B. Raines, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Griffin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction for possession of a controlled substance affirmed where the trial court's denial of his motion to suppress evidence was proper because the police did not exceed the permissible scope of a *Terry* search for weapons.

¶ 2   Following a bench trial, defendant Russell Antonio Jones was convicted of possession of a controlled substance for possessing 249.7 grams of heroin (720 ILCS 570/402(a)(1)(B) (West 2014)) and sentenced to 12 years' imprisonment. On appeal, defendant contends that the trial court erred when it denied his motion to suppress evidence because the police officer exceeded the

permissible scope of a *Terry* search for weapons when he removed an object from defendant's pocket that he knew was not a weapon without probable cause to believe it was narcotics. We affirm.

¶ 3    Defendant was charged with one count of possession with intent to deliver between 100 and 400 grams of a substance containing heroin (720 ILCS 570/401(a)(1)(B) (West 2014)). Defendant filed a pretrial motion to suppress evidence arguing that his arrest and search of his person and vehicle were illegal. Defendant argued that at the time of his arrest, he was not committing a crime, and police did not have an arrest warrant or probable cause to arrest him. He further argued that the search of his person and vehicle was conducted without his consent, probable cause, or any other exception to the search warrant requirement.

¶ 4    At the hearing on his motion,[1] defendant testified that shortly after 9 p.m. on November 26, 2014, he left his fiancée's mother's house on 92nd Street. He pulled his vehicle out of the garage to the side of the alley, and briefly parked parallel to the garage. His vehicle was not blocking any part of the alley. Defendant exited his vehicle and manually pulled down the garage door. He reentered his vehicle, fastened his seatbelt, and drove westbound through the alley towards Saginaw Avenue. Defendant noticed a dark SUV "barreling" through the alley. When he reached Saginaw, he honked his horn twice to alert pedestrians, turned on his right turn signal, and turned right onto Saginaw. At the intersection of Saginaw and 92nd Street, he stopped at the stop sign, turned on his right turn signal, and turned right onto 92nd Street. Near the corner of 92nd and Manistee Avenue, the dark-colored SUV pulled up behind him and activated its police lights. Defendant immediately pulled over and opened his window. A police officer approached his

---

[1] Defendant's motion to suppress was heard by Judge Thomas M. Davy.

driver's window. Defendant denied that he was shaking. The officer asked defendant what he was doing in the alley. Defendant replied that he was leaving his fiancée's mother's house. The officer asked what else he was doing. Defendant replied "nothing." The officer asked defendant for his driver's license, and defendant tendered it. The officer asked defendant where he lived and if he was going to the nearby club. Defendant replied "no." The officer had not yet told defendant why he was stopped.

¶ 5    The officer told defendant to exit his vehicle. Defendant asked if he was serious. The officer became "very assertive" and again told defendant to exit his vehicle. Defendant complied. The officer told defendant to turn around and face his vehicle, and immediately handcuffed defendant. Defendant did not feel that he was free to leave. The officer's partner exited the SUV and approached defendant. Defendant was wearing a blue down vest with a University of Chicago hooded sweatshirt. The vest had zippered pockets on each side. Defendant had "black tar heroin" in his right pocket.

¶ 6    In court, defendant identified the bag of heroin that was in his pocket on the night of the arrest. Defense counsel referred to the exhibit as "a rather bulky bag." Defendant described the contents as "[a] hard substance" and agreed it was a rectangular shape. On the night of the arrest, it was one solid object, not broken into pieces, inside a plastic bag. Defendant agreed the size and shape was that of a small rectangular object, similar to a deck of cards or cell phone. When the bag was inside his pocket, it was flat against his body and his pocket was zipped. There were no other items in his right pocket.

¶ 7    The officer who first approached defendant frisked him from his neck down to his ankles and back up to his chest. When the officer reached defendant's mid-section, the officer unzipped

defendant's right pocket, reached inside, and removed the bag of heroin. The officer did not ask defendant what was inside his pocket or for consent to enter his pocket. The plastic bag was not protruding from the zipped pocket. The officer did not feel around outside the zipped pocket or ask defendant any questions before he entered the pocket. The officer never showed defendant an arrest or search warrant, and never asked for defendant's consent to search his person. Defendant acknowledged that in 2007 he was convicted of aggravated discharge of a firearm to a peace officer or fireman and sentenced to 12 years' imprisonment.

¶ 8    On cross-examination, defendant acknowledged that he was issued traffic citations for illegally parking in the alley, not using a turn signal and not wearing a seatbelt. Defendant confirmed that the bag of heroin was his. Defendant agreed it was "pretty heavy" and "rock-like." He also agreed that it was about five inches long by five inches wide and about an inch and a half thick. Defendant denied that it created a bulge in his pocket.

¶ 9    On redirect examination, defendant testified that he did not receive the traffic citations at the scene of the stop, but received them later with his property from the jail. When the heroin was solid, it was in a rectangular shape, not square.

¶ 10    The State called Chicago police officer Matthew Birdsong who testified that in his nearly five years of experience as a police officer, he made "a couple hundred" narcotics arrests, with 50 to 60 of them involving heroin. About 9:05 p.m. on November 26, he was on routine patrol with his partner, Officer Adcock,[2] in an unmarked police vehicle. Birdsong observed a vehicle illegally parked in the alley of 92nd Street. As he drove towards the vehicle, the rear lights switched colors, indicating the vehicle was shifted from park into drive, and the vehicle pulled away. Birdsong

---

[2] Officer Adcock's first name does not appear in the record.

followed the vehicle. The driver made a right turn onto Saginaw without using a turn signal. It did not appear that the driver was wearing a seatbelt. Birdsong stopped the vehicle. Defendant was the driver and only occupant inside the vehicle. Birdsong identified defendant in court.

¶ 11      Birdsong approached the driver's side of the vehicle and observed that defendant was not wearing a seatbelt. Defendant appeared "[v]ery nervous" and his hand was visibly shaking as he retrieved his driver's license. While defendant was seated in his vehicle, Birdsong observed "a bulge protruding through his jacket pocket." Birdsong believed the bulge was possibly a weapon and feared for his safety. Birdsong asked defendant to step out of the vehicle. Defendant asked "are you sure," then complied. The traffic stop occurred in a high-narcotics and high-violence area. During a protective pat-down, Birdsong felt "a large rock-like kind of brick-like bulge" protruding from defendant's right jacket pocket and observed two inches of plastic sticking out of the pocket. Birdsong previously felt heroin during his prior heroin arrests. Based on his training and experience, the high-narcotics area, defendant acting nervous, the bulge, the plastic sticking out of defendant's pocket and the way the brick felt, Birdsong "knew immediately" when he first touched the object that defendant was in possession of heroin. Birdsong removed from defendant's pocket one plastic bag containing a gray rock-like substance of suspect heroin. Birdsong identified the bag of heroin in court. He testified that it felt like a brick and estimated its size as five inches by five inches and about an inch thick with additional smaller broken pieces. Birdsong also issued defendant traffic citations for parking in an alley, not using a turn signal, and not wearing a seatbelt.

¶ 12      On cross-examination, Birdsong acknowledged that the traffic citations were written at the police station hours after defendant's arrest. Birdsong first saw defendant sitting inside his vehicle parked in the alley, which is illegal. Birdsong's suspicion rose when defendant shifted his vehicle

into drive immediately after the officers entered the alley. Defendant did not interact with anyone in the alley. Nor did he speed out of the alley. Defendant pulled over immediately after Birdsong activated his police lights. Defendant was initially stopped for the traffic violations, and nothing indicated that a weapon or drugs were involved at that point. In his arrest and case reports, Birdsong did not indicate that the arrest was made in a high-drug, high-crime, high-violence area. Birdsong could not recall if he asked defendant anything about drugs or guns, and his reports did not indicate that he had. As defendant sat in his vehicle, Birdsong could see an object pushing out the material of his right jacket pocket. At that point, Birdsong did not see any packaging and did not think the object was drugs. Defendant was ordered out of the car because of the large bulge in his pocket. Defendant was not free to leave at that time. Defendant did not have a weapon on him or inside his vehicle, and Birdsong did not observe defendant reaching around inside the vehicle.

¶ 13    Birdsong conducted a pat-down of defendant, he did not immediately reach for the bulge. Birdsong's reports indicated that during a protective pat-down of defendant's jacket, Birdsong observed and felt a plastic bag protruding from defendant's right jacket pocket, and recognizing it to be narcotics packaging, he recovered the plastic bag containing a gray rock-like substance of suspect black tar heroin. His reports did not explicitly state that based on his experience he felt what he believed to be a controlled substance. Nor did his reports state that he felt a large rock-like, brick-like bulge. When he initially observed the plastic bag protruding from defendant's pocket, Birdsong could not see what was inside the bag. He did not know what was inside until he felt it. When he first felt the bag, Birdsong did not know what type of narcotics were inside. Birdsong acknowledged that a plastic bag could contain many hard items including a cell phone, debit card, or box of Junior Mints. Birdsong believed the bag contained drugs, but he did not know

what kind, and the only way to find out what was in the bag was to remove it. Birdsong agreed that he did not suspect the object to be black tar heroin until after he pulled it out and saw that it was a gray hard object. Birdsong knew the object he felt was not a gun. Birdsong testified "through my training and everything being in a plastic bag a hard object like that to me that's – I know that to be narcotics almost immediately." Birdsong handcuffed defendant after he recovered the narcotics. Birdsong also recovered about $260 from defendant.

¶ 14    On redirect examination, Birdsong testified that he felt the narcotics before he removed the bag from defendant's pocket. The bag of heroin was admitted into evidence.

¶ 15    Defense counsel argued that there was no justification for the traffic stop and that the pat-down exceeded the permissible scope of a *Terry* search for weapons. Counsel further argued that this was not a "plain touch" case because Birdsong's reports did not support his testimony that he performed a search which, based on his training, led him to believe that he was encountering drugs. The State argued that the police had probable cause to stop defendant for the traffic violations, the protective pat-down was proper, and based on the totality of the circumstances, Birdsong immediately believed he felt narcotics.

¶ 16    The trial court found that the stop based on the traffic violations was proper, as was the protective pat-down for Birdsong's safety. The court commented that Birdsong's statement that he observed and felt the plastic bag and recognized it as narcotics packaging had been "parsed, diagrammed, [and] gone over with a fine tooth comb." The court found that it was clear that Birdsong did not impermissibly manipulate the object, but rather, under the plain touch doctrine, he felt an item that he believed was narcotics, whether it was heroin or cocaine. Based upon the totality of the circumstances, the trial court denied defendant's motion to suppress.

¶ 17    At trial, Birdsong testified substantially the same as he did at the suppression hearing regarding his stop of defendant's vehicle after observing three traffic violations. Birdsong approached the driver's side of defendant's vehicle and Adcock approached the passenger's side. Birdsong identified defendant in court. Birdsong again testified that defendant's hand was visibly shaking as defendant retrieved his driver's license. He added that defendant's answers to his questions were inconsistent. Birdsong observed a large bulge in defendant's right jacket pocket. Due to defendant's nervousness, Birdsong believed the bulge could be a weapon and asked defendant to exit his vehicle. Defendant asked "[a]re you sure?" Birdsong replied "[y]es" and again asked him to exit his vehicle. Defendant moved his hand from the keys in the ignition to the gear shift. Birdsong again told him to exit the vehicle. Defendant moved his hand back to the keys, turned off the ignition, and exited his vehicle.

¶ 18    Birdsong conducted a protective pat-down of defendant for officer safety. Birdsong felt and observed a plastic bag protruding from defendant's right jacket pocket where he initially observed the bulge. The bag was consistent with narcotics packaging. Birdsong recovered the bag from defendant's pocket and found that it contained a chunky gray-like substance consistent with heroin. There were "several" chunks inside the bag. He estimated that the bag was "[p]robably a little bit smaller than a small-sized softball." Defendant was arrested for possession of heroin and issued three traffic citations.

¶ 19    On cross-examination, Birdsong testified that he did not observe anyone in the alley with defendant, nor did he observe defendant engage in any drug transactions. When Birdsong observed the bulge in defendant's pocket, he could not discern its shape. It did not appear to be an outline of a gun. It merely appeared to be a large object. The bulge was not round or any specific shape,

but "oddly shaped." It was a bag full of "chunked up heroin." Birdsong compared the texture of the substance to "broken up drywall." When Birdsong saw the plastic, he was immediately suspicious that it might be narcotics. Birdsong recovered the plastic bag based on what he felt and saw. He testified that the item he felt he "recognized to be narcotics immediately." Birdsong acknowledged that he did not recover a scale, box of plastic bags, drug ledgers, police scanners, a large amount of money, or any items that could be used to cut narcotics. No weapon was recovered.

¶ 20    On redirect examination, Birdsong clarified that during the pat-down, he first felt the bag, and then felt the chunky substance inside the bag. In court, Birdsong identified the bag of heroin recovered from defendant. He described the contents as a gray rock-like substance. The substance was in substantially the same condition as when he recovered it from defendant.

¶ 21    The State presented a stipulation that a forensic chemist tested the substance inside the bag recovered from defendant and found it positive for 249.7 grams of heroin. The bag of heroin was admitted into evidence.

¶ 22    The defense rested without presenting evidence. Defense counsel moved to reopen the motion to suppress evidence based on Birdsong's trial testimony, arguing that his search violated the limited scope of a *Terry* pat-down. The trial court noted that the motion to suppress was denied a year earlier by a different judge and denied counsel's request.

¶ 23    The trial court found defendant guilty as charged with possession of a controlled substance with intent to deliver.

¶ 24    The court subsequently allowed defendant to reopen his motion to suppress evidence based on his assertion that Birdsong's trial testimony revealed new evidence. At the hearing on that motion, defense counsel argued that Birdsong's statements and testimony regarding the shape of

the object were inconsistent, which undermined his credibility as to whether he touched the object inside the plastic bag before he removed the bag from defendant's pocket. Counsel pointed out that Birdsong described the shape in his arrest and case reports as a "large bulge," and at the suppression hearing as a rectangular "rock-like, brick-like bulge" with dimensions of five inches by five inches and an inch thick with some smaller broken pieces. However, at trial he described the object as "[p]robably a little bit smaller than a small-sized softball" and testified that he could not discern its shape, it was "oddly shaped," it was a bag full of "chunked up heroin," and it had a texture similar to "broken up drywall." Counsel argued that during the pat-down, Birdsong did not feel the object, but instead, observed and felt the plastic bag, suspected it was narcotics packaging, and on that basis removed the bag from defendant's pocket. Counsel argued that the plain touch doctrine did not apply because Birdsong did not know the object was narcotics by touching it.

¶ 25    The State argued that there were minor differences in the wording Birdsong used to describe the object he felt and that he did not have to use the same word every time. The State further argued that Birdsong testified that he felt the bulge in defendant's pocket and believed it was narcotics. Consequently, the State argued that under the plain touch doctrine, and the totality of the circumstances, Birdsong had probable cause to recover the narcotics, and defendant's motion to suppress was properly denied.

¶ 26    The trial court found that although there was "some difference" in Birdsong's testimony as far as the terminology he used, he consistently testified that he felt an object that he believed was narcotics. The court found that Birdsong had the training and experience to make that determination, and that his testimony was credible. The court concluded that Birdsong's recovery

of the heroin was allowed and denied defendant's motion to reconsider the ruling on his motion to suppress evidence.

¶ 27    At the hearing on defendant's motion for a new trial, the court found that the evidence did not support a finding that defendant had an intent to deliver. Accordingly, the court vacated its guilty finding for the offense of possession of a controlled substance with intent to deliver and found defendant guilty of the lesser-included offense of possession of a controlled substance. The court sentenced defendant to 12 years' imprisonment.

¶ 28    On appeal, defendant contends that the trial court erred when it denied his motion to suppress evidence because Birdsong exceeded the permissible scope of a *Terry* search for weapons when he removed the object from defendant's pocket that he knew was not a weapon without probable cause to believe it was narcotics. Defendant claims that Birdsong's testimony, in which he gave vague and inconsistent descriptions of the object, failed to establish that it was immediately apparent to him that the object was narcotics. Defendant argues that Birdsong did not testify about any training or experience he had in detecting narcotics by touch. He further argues that Birdsong's testimony that he observed a plastic bag and felt a hard object merely shows that he had a hunch it was narcotics. Defendant asserts that without the heroin, the State could not prove him guilty, and therefore, this court should vacate his conviction.

¶ 29    The State responds that the court's denial of the motion to suppress was proper because the totality of the circumstances gave Birdsong probable cause to seize the object from defendant's pocket. The State argues that Birdsong credibly testified about his training and experience including 50 to 60 arrests involving heroin, defendant's nervous demeanor in an area known for drug activity, Birdsong's observation of the plastic bag, and that he immediately knew the object

was narcotics when he felt it. The State notes that the trial court found that although Birdsong changed the terminology he used in his descriptions, his testimony was consistent.

¶ 30　　Our review of the trial court's ruling on a motion to suppress evidence presents questions of both fact and law. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). The trial court's factual findings are given great deference and will not be disturbed on review unless they are against the manifest weight of the evidence. *People v. Burns*, 2016 IL 118973, ¶ 15. However, the court's ultimate ruling on the motion is a question of law which we review *de novo*. *Id.* ¶ 16. At a hearing on a motion to suppress, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Ballard*, 206 Ill. 2d 151, 162 (2002). When reviewing the trial court's ruling on a motion to suppress, we may consider the testimony presented at trial as well as the testimony from the suppression hearing. *Richardson*, 234 Ill. 2d at 252.

¶ 31　　The fourth amendment of the United States Constitution and the Illinois Constitution protect citizens from unreasonable searches and seizures in their homes, effects and persons. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Reasonableness is measured with an objective standard by analyzing the totality of the circumstances. *People v. Moss*, 217 Ill. 2d 511, 518 (2005). Generally, to be deemed a reasonable search and seizure under the fourth amendment, police must obtain a warrant supported by probable cause. *People v. Johnson*, 237 Ill. 2d 81, 89 (2010). However, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court recognized an exception to the warrant requirement allowing police officers to briefly stop suspicious individuals to make reasonable inquiries to confirm or dispel their suspicions of criminal activity. The *Terry* Court held that a police officer may conduct a pat-down search of a person he is investigating at close range

to determine if that person is carrying a weapon where the officer justifiably believes the person is armed and dangerous. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). The sole justification for a pat-down search under *Terry* is for the protection of police and others in the area, not to discover evidence. *People v. Flowers*, 179 Ill. 2d 257, 263 (1997). A search that exceeds the boundaries necessary for determining if a suspect is armed is unreasonable under *Terry*, and any evidence recovered during such a search will be suppressed. *Sorenson*, 196 Ill. 2d at 432.

¶ 32    In determining whether a pat-down search is reasonable, an officer does not need to be absolutely certain the person is armed; instead, the question is whether, under the circumstances, a reasonably prudent person would believe that his safety or that of others was in danger. *People v. Colyar*, 2013 IL 111835 ¶ 36 (citing *Terry*, 392 U.S. at 27). In each case, consideration must be given to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Sorenson*, 196 Ill. 2d at 433. The limitations of a search in any particular case depends upon the factual circumstances of that case. *Id.* at 440 (citing *Terry*, 392 U.S. at 29).

¶ 33    Pursuant to the "plain touch" doctrine, under certain circumstances, police officers may seize contraband detected through the sense of touch during the lawful execution of a *Terry* pat-down search. *People v. Mitchell*, 165 Ill. 2d 211, 215-16 (1995) (citing *Minnesota v. Dickerson*, 508 U.S. 366 (1993)). In *Dickerson*, the Supreme Court explained " '[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.' " *Id.* (quoting *Dickerson*, 508 U.S. at 375-76). "When objects have a distinctive and consistent shape

- 13 -

that an officer has been trained to detect and that officer has had previous experience in detecting such objects, his tactile perceptions can provide him with the same recognition that his sight would have provided." *Mitchell*, 165 Ill. 2d at 227. The court further stated that "the officer's belief must be objectively reasonable, in light of his past experience and training, and capable of verification." *Id.* In addition, the court noted that tactile evidence could be preserved for trial which would give the court an opportunity to evaluate the object that the officer claimed justified the seizure. *Id.* at 228. Under the plain touch doctrine, where an officer conducting a *Terry* stop and pat-down discovers contraband, he is not required to avert his attention from that evidence. *Id.* at 229.

¶ 34    Here, we initially note that defendant does not argue that the traffic stop or protective pat-down for weapons was improper under *Terry*, and thus, Birdsong, had legal justification for the intrusion. See *Mitchell*, 165 Ill. 2d at 230.

¶ 35    The record reveals that, based on the totality of circumstances in this case, Birdsong's pat-down search of defendant was reasonable and did not exceed the permissible scope of a *Terry* search. At the suppression hearing, Birdsong testified that in his nearly five years of experience as a police officer, he made "a couple hundred" narcotics arrests, with 50 to 60 of them involving heroin. He had felt heroin during some of those arrests. When Birdsong approached defendant's vehicle, defendant appeared "[v]ery nervous" and his hand was visibly shaking as he retrieved his driver's license. While defendant was seated in his vehicle, Birdsong observed "a bulge protruding through his jacket pocket." Birdsong believed the bulge was possibly a weapon. Consequently, Birdsong asked defendant to exit his vehicle and he conducted a protective pat-down of defendant for officer safety. During the pat-down, Birdsong felt a large rock-like, brick-like bulge protruding from defendant's right jacket pocket and observed two inches of plastic sticking out of the pocket.

Based on his training and experience, the high-narcotics area, defendant acting nervous, the bulge, the plastic sticking out of defendant's pocket and the way the brick felt, Birdsong "knew immediately" when he first touched the object that defendant was in possession of heroin. Birdsong removed the object from defendant's pocket and found that it was a plastic bag containing a gray rock-like substance of suspect heroin. Birdsong identified the bag of heroin in court. The trial court found that under the plain touch doctrine, Birdsong felt an item that he believed was narcotics, and his recovery of that item was proper.

¶ 36     The record further shows that Birdsong's trial testimony was substantially the same as his testimony at the suppression hearing. At trial, Birdsong again testified that he observed a large bulge in defendant's right jacket pocket. During the pat-down, he felt and observed a plastic bag protruding from the pocket that was consistent with narcotics packaging. He also felt the chunky substance inside the bag. He testified that the item he felt he "recognized to be narcotics immediately." He recovered the bag and found that it contained a chunky gray-like substance consistent with heroin.

¶ 37     We find no merit in defendant's argument that Birdsong's various descriptions of the object were vague and inconsistent, and that his testimony failed to establish that he immediately knew the object was narcotics. The record shows that although Birdsong used different terminology when describing the object, he consistently testified that he felt a large object which he immediately knew was narcotics. Moreover, the record further shows that the bag of heroin was admitted into evidence at both the suppression hearing and at trial. The trial court therefore had the opportunity to view and evaluate the object when determining Birdsong's credibility and the consistency of his testimony. *Mitchell*, 165 Ill. 2d at 228. The court expressly stated that it found

Birdsong's testimony credible and consistent. It was the trial court's responsibility to determine the credibility of Birdsong's testimony and to resolve any conflicts therein. *Ballard*, 206 Ill. 2d at 162. We find no reason to disturb the court's determination.

¶ 38    Based on this record, we conclude that the totality of the circumstances in this case show that Birdsong's recovery of the heroin under the plain touch doctrine did not exceed the permissible scope of a *Terry* search. Accordingly, the trial court's denial of defendant's motion to suppress evidence was proper.

¶ 39    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.